STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Norbert W. MAUTHE, individually and d/b/a N.W. Mauthe Company, Defendant-Respondent,

WISCONSIN CHROMIUM CORPORATION, Defendant.

Supreme Court

*No. 83–1884. Argued January 31, 1985.—
Decided April 30, 1985.*

(Also reported in 366 N.W.2d 871.)

For the plaintiff-appellant-petitioner the cause was argued by *Shari Eggleson,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant-respondent there was a brief by *Michael S. Siddall* and *Herrling, Clark, Hartzheim & Siddall, Ltd.,* Appleton, and oral argument by *Michael S. Siddall.*

DAY, J.   The environmental concerns involved in this case raise the important question of who pays for cleaning up the source of a seeping contaminant in a site where there is no current human activity from which the seeping of the contaminant results.  The state argues that the owner of the property must be held responsible. We agree.

We hold that the seepage of a hazardous substance from contaminated soil into neighboring properties is a "discharge" within the meaning of sec. 144.76(1) (a), Stats. and of sec. 144.76(3).  We also hold that the owner of the property which contains contaminated soil from which a hazardous substance is being discharged is required to take remedial action under sec. 144.76(3).  We therefore reverse the decision of the court of appeals and the order of the circuit court dismissing the complaint against Mr. Mauthe, individually, and Mr. Mauthe, d/b/a N.W. Mauthe Company.

The case is before us on review of an unpublished decision of the court of appeals affirming an order of the circuit court for Outagamie county, Honorable Harold V. Froehlich, circuit judge, dismissing on the merits and with prejudice the state's complaint against the defendants, Norbert W. Mauthe, individually, and Norbert W. Mauthe, d/b/a N.W. Mauthe Company.

The issues on review are:

1. Does the seeping of a hazardous substance from contaminated soil into neighboring properties constitute a "discharge" within the meaning of sec. 144.76(1)(a), Stats. 1981–82, and of sec. 144.76(3)?[1]

2. Can the owner of property which contains contaminated soil from which a hazardous substance is being discharged, be required to take remedial action under sec. 144.76(3), Stats. 1981–82?

The trial court granted the defendant's motion to dismiss for failure to state a claim upon which relief can be granted under sec. 802.06(2)(f), Stats. 1981–82.[2] In testing whether a complaint fails to state a

[1] Mr. Mauthe asserts that since he is no longer dumping on the site, any prayer for relief, though phrased in injunctive terms, is in effect an injunction requiring the payment of money damages. According to Mr. Mauthe, this prayer for relief is improper and should be dismissed. In sec. 144.98, Stats. 1981–82, the legislature gave the circuit courts the authority to grant "injunctional and other relief appropriate for enforcement" of chapter 144. Section 144.76(3), states that a person responsible under its provisions "shall take the actions necessary to restore the environment to the extent practicable. . . ." It is apparent the legislature decided that those responsible should take affirmative action to remedy the problem. In the appropriate cases, Wisconsin courts have the power, by use of a mandatory injunction, to order that affirmative action be taken. *Gimbel Brothers v. Milwaukee Boston Store*, 161 Wis. 489, 496, 154 N.W. 998 (1915). The state's request for relief, which asks that defendant's assume the responsibility for the chromium clean up is proper.

[2] "802.06. **Defenses and objection; when and how presented; by pleading or motion; motion for judgment on the pleadings.** . . .

"(2) How PRESENTED. Every defense, in law or fact, except the defense of improper venue, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or 3rd party claim shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . .

claim pursuant to a motion under sec. 802.06(2)(f), "[t]he facts pleaded and all reasonable inferences from the pleadings must be taken as true. . . ." *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 731, 275 N.W.2d 660 (1979).

The following allegations are taken from the state's complaint. Prior to 1976, the Wisconsin Chromium Corporation owned and operated a metal plating facility at 725 Outagamie Street in Appleton. In 1976, Norbert W. Mauthe, president of Wisconsin Chromium, sold the corporate name and customer list to another company but retained the Outagamie Street facility where he continued to do metal plating.

About March 31, 1982, Department of Natural Resources (DNR) personnel, responding to a complaint, discovered evidence of hazardous substance spills in the neighborhood of Mr. Mauthe's Outagamie plating facility. Subsequent laboratory analysis of water samples collected on and adjacent to Mr. Mauthe's property indicated that the water contained very high levels of hexavalent chromium, as well as other heavy metals. Further investigation by DNR personnel revealed extensive chromium contamination of the soil and groundwater in the vicinity of the defendant's facility.

The state further alleged that hexavalent chromium is a hazardous substance within the meaning of chapter

---

"(f) failure to state a claim upon which relief can be granted. . . ."

[3] "144.01. **Definitions.** Except as the context requires otherwise, the following terms as used in this chapter mean: . . .

"(4m) 'Hazardous substance' means any substance or combination of substances including any waste of a solid, semisolid, liquid or gaseous form which may cause or significantly contribute to an increase in mortality or an increase in serious irreversible or incapacitating reversible illness or which may pose a substantial present or potential hazard to human health or the environment because if its quantity, concentration or physical, chemical or infectious characteristics. This term includes, but is not limited

144, Stats. 1981–82[3] and that the defendants violated sec. 144.76(3), by failing to take the remedial action required. According to the complaint, the DNR has arranged for the collection of contaminated material from the site and its transportation to a treatment facility.[4]

Mr. Mauthe provided the following information which the state does not dispute. Wisconsin Chromium Corporation was incorporated in 1946 and conducted chrome electroplating activities at the location which is the subject matter of this lawsuit from approximately 1960 through 1976. Mr. Mauthe purchased that property in 1966 and then leased the property to Wisconsin Chromium. Wisconsin Chromium has not operated since 1976 and, although never dissolved, it is essentially a defunct corporation. At or about that time Mr. Mauthe formed N.W. Mauthe Company. Since 1976, there has been no chromium or chrome electroplating activity conducted on that property.

The state asserts that the chromium which had escaped over the years from the chrome electroplating

to, substances which are toxic, corrosive, flammable, irritants, strong sensitizers or explosives as determined by the department."

[4] It appears that the DNR was acting pursuant to its authority under sec. 144.76(7)(a), Stats. 1981–82, and that it financed those operations by use of the state's spill fund established under sec. 144.76(6). Those statutory sections provide:

"144.76. Hazardous substance spills. . . . (7) REMOVAL OR OTHER EMERGENCY ACTION. (a) In every case where action required under sub. (3) is not being adequately taken or the identity of the person responsible for the discharge is unknown, the department or its agent may contain, remove or dispose of the hazardous substance or take any other emergency action which it deems appropriate under the circumstances."

"144.76. Hazardous substance spills. . . . (6) HAZARDOUS SUBSTANCES SPILL FUND. (a) The appropriation under s. 20.370(2)(cc) shall be used in implementing and carrying out the contingency plan developed under sub. (5). This fund shall provide for the procurement, maintenance and storage of necessary equipment and supplies, personnel training and expenses incurred during containment, clean-up and disposal of discharged substances."

operation into the soil under and around the plating buildings eventually, through surface water runoff and percolation and groundwater flow, began seeping into neighboring properties.

The state commenced this action on October 2, 1982, by filing a complaint against Mr. Mauthe, individually and d/b/a N.W. Mauthe Company, and Wisconsin Chromium Corporation. The state seeks an injunction requiring the defendants to assume responsbility for the continuing containment and removal of contaminated water and soils, to reimburse the containment and removal expenses incurred by the DNR, to pay forfeitures as provided under sec. 144.99, Stats. 1981–82,[5] to pay the twelve percent penalty assessment provided under sec. 165.87(2)(a),[6] to pay the costs and disbursements of this action and to comply with other relief which the court deems just and appropriate.

On July 27, 1983, Mr. Mauthe filed a motion to dismiss himself, individually and d/b/a N.W. Mauthe Company, from the suit. The trial court granted the motion and entered the order dismissing the complaint on Sep-

---

[5] "144.99. **Penalties.** Any person who violates this chapter, except ss. 144.30 to 144.426 and 144.96(1), or any rule promulgated or any plan approval, license or special order issued under this chapter, except under those sections, shall forfeit not less than $10 nor more than $5,000, for each violation. Each day of continued violation is a separate offense. While the order is suspended, stayed or enjoined, this penalty shall not accrue."

[6] "165.87 **Law enforcement training fund.** . . . (2) LEVY OF PENALTY ASSESSMENT. (a) On or after July 1, 1980, whenever a court imposes a fine or forfeiture for a violation of state law or for a violation of a municipal or county ordinance except for state laws or such ordinances involving nonmoving traffic violations, there shall be imposed in addition a penalty assessment in an amount of 12% of the fine or forfeiture imposed. If multiple offenses are involved, the penalty assessment shall be based upon the total fine or forfeiture for all offenses. When a fine or forfeiture is suspended in whole or in part, the penalty assessment shall be reduced in proportion to the suspension."

tember 15, 1983. The court of appeals, in its decision filed August 21, 1984, affirmed the order of the trial court. This court accepted review to determine if the seeping of hazardous substances from contaminated soil into neighboring properties constitutes a discharge under sec. 144.76(1)(a), Stats., and to determine if the owner of the property containing that contaminated soil can be required to take remedial action under sec. 144.76(3).

Section 144.76(3), Stats. provides:

"**144.76. Hazardous substance spills. . . . (3)** RESPONSIBILITY. A person who possesses or controls a hazardous substance which is discharged or who causes the discharge of a hazardous substance shall take the actions necessary to restore the environment to the extent practicable and minimize the harmful effects from the discharge to the air, lands or waters of this state."

Mr. Mauthe asserts that this statute does not impose liability on him in this situation for two basic reasons. First, he claims that even if the state's assertion that the hazardous substance chromium is seeping from contaminated soil on his property into neighboring properties is true, sec. 144.76(3), Stats., does not apply because this seepage is not a discharge as defined in sec. 144.76(1)(a). Second, he claims that even if that seepage is a discharge within the meaning of the statute, he is not within the class of persons upon which sec. 144.76(3), imposes liability to remedy the situation.

Whether the state's complaint and the reasonable inferences drawn therefrom state a claim for relief under sec. 144.76, Stats., is a question of law. Therefore, "this court need not give special deference to the determination of the circuit court or the court of appeals." *LePoidevin v. Wilson*, 111 Wis. 2d 116, 121, 330 N.W.2d 555 (1983).

## (1) *DISCHARGE*

The term discharge as used in sec. 144.76(3), Stats., is defined in sec. 144.76(1)(a), as follows:

"(1) DEFINITIONS. As used in this section:
"(a) 'Discharge' means, but is not limited to, spilling, leaking, pumping, pouring, emitting, emptying or dumping."

Mr. Mauthe contends, and the circuit court agreed, that the definition of "discharge" given in sec. 144.76 (1)(a), Stats., requires some kind of human activity which results in contaminant seepage. For example, the contamination of the soil during the time the chrome electroplating activities occurred on Mr. Mauthe's premises would constitute a discharge under sec. 144.76(1) (a). According to Mr. Mauthe, he may not be held liable for those activities because the electroplating on his premises ceased in 1976 prior to the effective date of sec. 144.76, in 1978. To hold him liable would violate the *ex post facto* clause of the Wisconsin Constitution.[7] He also claims that he cannot be held liable for the current seeping of chromium into neighboring properties because there is no current human activity from which the seeping results and, therefore, there is no discharge under sec. 144.76(1)(a). He claims "discharge" as defined under the statute does not cover inactive waste sites from which hazardous substances are flowing.

In support of his contention, Mr. Mauthe cites *State, Department of Environmental Protection v. Exxon Corp.*, 376 A.2d 1339, 1343 (N.J. Super. 1977), in which

---

[7] Article I, section 12 of the Wisconsin Constitution provides:
"**Attainder; ex post facto; contracts.** SECTION 12. No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed, and no conviction shall work corruption of blood or forfeiture of estate."

the New Jersey court found an affirmative human act requirement in the almost identical definition of discharge given in a New Jersey environmental law. He also cites *United States v. Wade,* 546 F. Supp. 785 (E.D. Pa. 1982), and *United States v. Waste Industries, et al.,* 556 F. Supp. 1301 (E.D. N.C. 1982), in support of his contention that "discharge" should be limited to current disposal practices and not be extended to cover inactive waste sites from which hazardous substances are currently flowing.

In analyzing sec. 144.76, Stats., Mr. Mauthe argues that the use of present tense verbs in that statute demonstrates the apparent intent of the legislature to limit its effect to current disposal practices.

There is nothing inherent in the use of the present tense that requires a limitation of the statute to current "practices" or human activity. It is perfectly consistent with the use of the present tense to say the statute applies to current discharges and to say there is no requirement of practices or human conduct from which the discharge results in the definition of discharge. The issue is whether the definition of discharge requires some element of current human activity or practice.

The *Wade* and *Waste Industries* cases are not persuasive when applied to the instant case. First, several other federal courts have held, contrary to *Wade* and *Waste Industries,* that the federal Resource Conservation and Recovery Act (RCRA) applies to inactive waste sites where there is no current human activity.[8] Second, the RCRA provisions under consideration in *Wade*

---

[8] "*Cf. United States v. Price,* 523 F. Supp. 1055, 1071–1073 (D. N.J. 1981), *affirmed,* 688 F.2d 204 (3rd Cir. 1982); *United States v. Price,* 688 F.2d 204, 214 (3rd Cir. 1984), *affirming,* 523 F. Supp. 1055 (D. N.J. 1981); *Jones v. Inmont Corp.,* 584 F. Supp. 1425, 1436 (S.D. Ohio 1984); *United States v. Diamond Shamrock Corp.,* 17 ERC 1329, 1333 (N.D. Ohio 1981).

and *Waste Industries* are distinguishable from the provisions of sec. 144.76(1)(a), Stats. Those RCRA provisions provide in pertinent part:

"[U]pon receipt of evidence that the handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment, the Administrator may bring suit on behalf of the United States in the appropriate district court to immediately restrain any person contributing to such handling, storage, treatment, transportation or disposal to stop such handling, storage, treatment, transportation, or disposal or to take such other action as may be necessary." 42 U.S.C. § 6973(a) (1982).

Arguably terms such as "handling, storage, treatment, transportation or disposal" in the RCRA necessarily involve active human conduct. In examining the plain meaning of some of the terms in sec. 144.76(1)(a), Stats., the same cannot be said. Words such as "leaking" or "emitting" have no apparent tie to human activity and often refer to phenomena which occur absent human conduct.

We conclude that human activity or practice is not a necessary element in the definition of discharge under sec. 144.76(1)(a), Stats. This follows from the plain meaning of the statute as well as the legislative intent in enacting this statute.

The common and ordinary meaning of a word may be established from the definition given in a recognized dictionary. *In re Estate of Haese*, 80 Wis. 2d 285, 291, 259 N.W.2d 54 (1977). "Emit" means "to send out . . . to throw or give off or out . . . EJECT, EXUDE, LOOSE. . . ." *Webster's Third New International Dictionary*, 742 (G&C Merriam Co. 1964). The outflow of chromium in this case easily falls within that definition. Due to surface water runoff and percolation and

groundwater flow, the contaminated soil on Mr. Mauthe's property is now sending out, throwing off, or "emitting" a hazardous substance into neighboring properties. Therefore, under the meaning of the statute, the outflow of chromium is a discharge without regard to human activity.

Legislative intent is primarily deduced from the language which the legislature has chosen to use. *Julius v. Druckery*, 214 Wis. 643, 649, 254 N.W. 358 (1934). In examining the language of sec. 144.76(1)(a), Stats., it becomes apparent that the legislature intended to define discharge broadly. First, the legislature used words with broad meanings such as "emitting," "leaking" and "spilling." Second, this intent is evidenced by the legislature's express direction that the definition not be limited to the words given. To limit the definition of discharge to include only that which is related to human activity without an express legislative directive, would be contrary to the legislative intent to broadly define that term.

Furthermore, a statute should be interpreted in light of its purpose. The purpose of sec. 144.76, Stats., is to prevent, minimize, and, if necessary, abate and remedy contamination of this state's environment and the resultant risks to human health caused by discharges of hazardous substances. The same risks to this state's environment and to human health are present whether or not the seepage of a hazardous substance occurred in relation to some human activity at the time the seepage occurred. Therefore, it is consistent with legislative purpose not to place such a limitation on the definition of discharge. We conclude the outflow of a hazardous substance from contaminated soil into neighboring properties is a discharge as defined in sec. 144.76 (1)(a), and as used in sec. 144.76(3).

## (2) *RESPONSIBILITY*

Given that the emanation of hazardous substances from contaminated soil into neighboring properties does constitute a discharge under sec. 144.76(1)(a), Stats., the remaining issue is whether the owner of the land containing that soil is responsible under sec. 144.76(3), to take remedial action. Responsibility under sec. 144.76 (3), falls upon a "person who possesses or controls a hazardous substance which is discharged or who causes the discharge of a hazardous substance." The circuit court and the court of appeals agreed with Mr. Mauthe's contention that mere ownership of the property in which the contaminated soil is located is not sufficient to impose liability under sec. 144.76(3). We disagree.

A basic rule of statutory construction is that "meaning should be given to every word, clause and sentence in the statute, and a construction which would make part of the statute superfluous should be avoided wherever possible." *Kollasch v. Adamany,* 104 Wis. 2d 552, 563, 313 N.W.2d 47 (1981). Giving meaning to every word and clause in sec. 144.76(3), Stats., it is apparent that liability may be imposed upon anyone who causes a hazardous substance discharge or upon a person who possesses or controls the hazardous substance being discharged even though that person did not cause the discharge.

The common and ordinary meaning of a word may be established from the definition given by a recognized dictionary. *In re Estate of Haese,* 80 Wis. 2d 285, 291, 259 N.W.2d 54 (1977). "Possess" is defined in *Black's Law Dictionary,* 1046 (5th ed. 1979) as follows:

*"POSSESS.* To occupy in person; to have in one's actual and physical control; to have the exclusive detention and control of; to have and hold as property;

to have a just right to; to be master of; to own or be entitled to."

Under this definition, Mr. Mauthe, individually and d/b/a N.W. Mauthe Company, does possess the contaminated soil and the chromium which is contaminating that soil. He has "actual and physical control" of the chromium and he "owns" and has "exclusive . . . control of" the contaminated soil. As landowner, he is the only person, absent legal intervention, entitled to take the type of remedial action necessary. He is the only person entitled to excavate, to remove the contaminated soil or to construct an impermeable barrier around the soil to prevent further discharge.

The court of appeals and the circuit court reasoned that the legislature would have expressly stated its intent to impose liability as a consequence of property ownership. The terms chosen by the legislature, however, are broad. "[P]ossesses or controls" clearly encompasses property ownership as well as other means of possessing and controlling. It would be unreasonable to expect the legislature to enumerate all the ways in which a hazardous substance which is discharged may be possessed or controlled.

Mr. Mauthe also asserts that to hold him liable under sec. 144.76, Stats., would violate the *ex post facto* clause of the Wisconsin Constitution because the electroplating activities which contaminated the soil on his property ceased two years prior to the enactment of that statute. We conclude that to hold Mr. Mauthe liable would not violate the *ex post facto* clause. The action brought by the state relates only to the discharge from the contaminated soil located on his property and it does not relate to the activities which took place on his property prior to the statute's enactment. It is the abate-

ment of this current discharge that the state is seeking. Therefore, this is not an *ex post facto* application of law.

The manner in which our air, water and land is to be safeguarded, protected and improved is under the control of the legislature. The various laws passed and the grants of authority to state agencies is the means by which this is done. *Wisconsin Environmental Decade v. D.N.R.,* 115 Wis. 2d 381, 414, 340 N.W.2d 222 (1983). The vitally important work of protecting the life sustaining forces around us, collectively referred to as the environment, is basic and fundamental to our survival. The means to achieve these ends are not always agreed upon. Experts often are in disagreement as to how to achieve these results. Under our system it is the legislature and the agencies it empowers to carry out its mandates that bear this tremendous responsibility. It is they who must resolve the conflicting interests and approaches to specific problems. "[T]he D.N.R. is the state agency with the staff, sources and expertise in environmental matters. . . ." *Wisconsin's Environmental Decade,* 115 Wis. 2d at 391.

In the conflicts that inevitably arise over achieving an almost universally acclaimed goal, the court must look to the wording of the law and, where necessary, the legislative history to determine the legislative intent. How did the legislature intend this law to be carried out? Who was to bear the economic responsibility of carrying out its mandates?

Under the facts of this case, we can only conclude that the responsibility is on the owner. The legislature could have said that the taxpayers as a whole shall clean up the results of this particular form of industrial pollution. But it did not. It acted well within its authority by saying that the possessor shall bear the cost of correcting the condition on this land that is resulting in the contamination of its neighbor's property.

Aldo Leopold, the great Wisconsin conservationist in his well-known work, *A Sand County Almanac,* (1948) at page 203 said:

"Individual thinkers since the days of Ezekiel and Isaiah have asserted that the despoliation of land is not only inexpedient but wrong."

The statutes under consideration are a legislative recognition that the discharge of hazardous substances is one form of despoilation. The legislature has enacted this law to correct that wrong.

Accepting as true the facts pled in the state's complaint as well as the reasonable inferences drawn from that complaint, we conclude that a claim for relief under sec. 144.76, Stats., has been stated.

*By the Court.*—The decision of the court of appeals affirming the circuit court's order to dismiss the complaint is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.