Gregory J. FOSS and Patricia A. Foss, Plaintiffs-Appellants,†

v.

MADISON TWENTIETH CENTURY THEATERS, INC. and Dean Fitzgerld, Defendants-Respondents,

Bruce NEVIASER and Neviaser Investments, Defendant.

Court of Appeals

*No. 95–0170. Submitted on briefs October 13, 1995.—Decided June 27, 1996.*

(Also reported in 551 N.W.2d 862.)

†Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the brief of *Anthony R. Varda* of *DeWitt Ross & Stevens, S.C.* of Madison.

For the defendants-respondents the cause was submitted on the brief of *Donald K. Schott, Waltraud A. Arts* and *Anthony A. Tomaselli* of *Quarles & Brady* of Madison.

Before Gartzke, P.J., Sundby and Snyder, JJ.

GARTZKE, P.J. Gregory and Patricia Foss appeal from a judgment dismissing their amended complaint against Madison Twentieth Century Theaters, Inc., its president Dean Fitzgerald, and its real estate agent Bruce Neviaser and Neviaser Investments. Plaintiffs claim damages for fraudulent misrepresentations regarding the property they bought from defendants and for contribution to their expenses in cleaning up contaminated soil on the property. The trial court granted motions by Twentieth Century and Fitzgerald for summary judgment and denied the Fosses' motion for summary judgment on the claim for contribution. We affirm.

Summary judgment procedure is used to determine whether a genuine issue of material fact must be tried. Summary judgment methodology has been stated many times, and we need not repeat it. *Grams v. Boss,* 97 Wis. 2d 332, 338-39, 294 N.W.2d 473, 476-77 (1980), is one of the many cases describing it. When, as here, the material facts are not substantially disputed,

we forego the step-by-step analysis the methodology requires. The issues will be clearer when we state the Fosses's contentions after we describe the facts.

## I. FACTS

Gregory Foss, a self-employed builder, learned in late December 1991 that the Old Middleton Theater in Middleton, Wisconsin, was for sale. Twentieth Century owned the property and had listed it for sale with Bruce Neviaser, a real estate broker. In January 1992, Gregory Foss offered to purchase the property for $110,000. Twentieth Century, by its president Dean Fitzgerald, accepted the offer. Gregory's wife, Patricia, is not a party to the offer. The trial court determined, and it is not disputed, that she had no role in the contract negotiations.

Neviaser prepared the offer on a form which contained a preprinted statement providing as follows:

> Seller warrants and represents to Buyer that Seller has no notice or knowledge of any:
>
> . . . .
>
> (c) underground storage tanks . . . and the presence of any dangerous or toxic materials or conditions affecting the property.

According to Neviaser, he inadvertently left the statement regarding the underground tanks in the offer, and it is undisputed that when they accepted the offer the defendants knew the property contained two underground heating oil storage tanks.

We assume that, as he claims, Gregory Foss did not know about the underground tanks when he made the offer. However, because the offer erroneously described the size of the property, it was surveyed and

214

the survey showed the underground tanks. Foss deposed that he knew at that time the defendants had made a mistake when representing there were no underground tanks, but the presence of the tanks did not concern him because he had a "legal contract. In the offer to purchase it stated there were no underground tanks, . . . and it was their responsibility." If the site was contaminated, "it was their responsibility to clean it up, and I had the offer to purchase to that effect . . . ." When he learned the tanks existed, Foss could have stopped the building project he had planned, but he continued with it because he had incurred $15,000 to $30,000 in development costs, and he "was going to make some money on it." He did not ask to have the offer amended to reflect that the tanks were there because the offer provided there were none "and it's their responsibility."

In April 1992, the Middleton Fire District advised Foss that before he removed the existing building from the property, a certified remover would have to take out the tanks. In May 1992 the bank conditioned its financing of the building project on removal of the tanks and submission of an engineer's report to the bank showing no contamination or, in the event of contamination, notification to the department of natural resources and performance of soil borings, monitoring wells and tests and other reports necessary to comply with DNR's regulations. Foss then requested Neviaser to contact DNR regarding the cost of dealing with the tanks and whether funding was available. Neviaser reported to him that DNR had said funding did not cover heating fuel leakage for commercial properties and the typical cost ranged from $3,000 to $8,000.

In June 1992, Foss asked Twentieth Century for permission to remove the tanks and to begin demolish-

ing the building. He wanted to see if the property was contaminated and to expedite demolition. Twentieth Century denied his request.

Before the closing, Foss undertook no investigation and did not inquire of the defendants whether the tanks were leaking. He testified, "I had a contract, and if they found out the soil was contaminated, they were legally responsible to clean it up, and I wasn't worried about it." He added that if the defendants "were wrong, and if there were problems, I would do exactly what I'm doing now," i.e., sue them.

At the closing on July 7, 1992, Fitzgerald presented Foss with a letter stating that the property was sold "as is," removal of the oil tanks was Foss's sole responsibility, and if oil spills or environmental problems existed, Twentieth Century would pay no more than $750 for the expense. Foss states that the letter did not concern him, because Twentieth Century was "legally responsible" to clean up any contamination. We infer that both Gregory and Patricia Foss took title to the property at the closing.[1]

In August 1992, when Foss had the tanks removed, the excavation revealed that one tank had been leaking diesel fuel into the ground and that the leak had reached groundwater. DNR subsequently instructed Foss what had to be done to clean up the leakage but DNR did not order remedial measures. Foss paid for the clean up, and Twentieth Century tendered nothing toward his expense. He started his proposed housing project that August and completed it

---

[1] We draw that inference from allegations in the complaint which appear to assume she acquired an interest in the real estate. The record itself contains no direct evidence, such as a conveyance, that Patricia as well as Gregory took title.

in April or May 1993. In March 1993, Foss commenced this action.

The amended complaint pleads three claims against defendants. The first claim, entitled "fraudulent misrepresentations," alleges that Twentieth Century and Fitzgerald knew the underground tanks existed when Foss made his offer to purchase, and defendants knew or should have known at the closing that a tank was leaking. Because of the site pollution, his mortgage lender refused to advance construction funds, his clean up costs would exceed $125,000, and the delayed completion of his project caused over $40,000 in lost rentals. The second claim, entitled "statutory indemnification" alleges that "pursuant to" § 144.76, STATS., defendants are "legally obligated to contribute to the clean up of the hazardous substance allowed to be released on the site." The third claim is based on unjust enrichment of Twentieth Century and Neviaser, but it is not briefed and we assume it is not before us.

## II. THE FOSSES' CONTENTIONS

Gregory Foss contends that he is entitled to tort damages from the defendants because he reasonably relied on Twentieth Century's representations in the sale contract[2] that it had no knowledge of underground tanks and no knowledge of the presence of dangerous toxic materials or conditions affecting the land.[3] Greg-

---

[2] Acceptance of an offer to purchase creates a contract to sell. *Dittman v. Nagel*, 43 Wis. 2d 155, 163, 168 N.W.2d 190, 194 (1969).

[3] While both Gregory and Patricia Foss plead this tort, Patricia's tort claim was properly dismissed because she was not a party to the contract and there is no evidence that defendants made any representations to her.

217

ory and Patricia contend they properly pleaded claims as owners of the property against defendants for common law contribution as well as indemnification. Finally, the Fosses contend that the trial court erroneously exercised its discretion under § 806.07, STATS., by refusing to reopen its orders granting defendants' motion for summary judgment. They assert reopening should be ordered because a Twentieth Century employee had perjured himself during discovery by testifying Twentieth Century had not known when it accepted Gregory Foss's offer that a tank was leaking oil.

## III. RELIANCE ON REPRESENTATIONS

Although it is undisputed that defendants misrepresented the facts regarding the existence and their knowledge of the underground storage tanks, that does not establish Foss's fraudulent misrepresentation claim. To succeed on such a tort claim, the representation must be of fact and made by the defendant, the representation must have been false, and Foss must have believed the representation was true and relied on it to his damage. *Whipp v. Iverson*, 43 Wis. 2d 166, 169, 168 N.W.2d 201, 203 (1969). Whether on the undisputed facts before us Foss relied is a question of law.

In early 1992 Foss learned that the property contained underground storage tanks, but he nevertheless closed the purchase of the property in July 1992. When he learned that a misrepresentation had been made, Foss was undeceived and, as a matter of law, he could no longer rely on the prior representation. The law will

not permit a person to predicate damage upon statements which he does not believe to be true, for if he knows they are false, it cannot be said that he is deceived by them. *First Credit Corp. v. Behrend*, 45 Wis. 2d 243, 251, 172 N.W.2d 668, 671-72 (1969). Nobody has the right to rely on representations he or she knew to be untrue. *Id.* at 251, 172 N.W.2d at 672. Because he knew that defendants' representation was false before he took title to the property, Foss did not rely on the representation that no underground tanks existed and he cannot base a tort claim upon it. Whether he could have brought an action on the contract is not before us.

We assume, as Foss alleges and contends, that Twentieth Century knew before the closing that an underground fuel tank had been leaking oil. Foss asserts, and we assume, that he did not know before the closing that a tank was leaking. Foss asserts that he relied on Twentieth Century's representation in the sale contract that there were no leaks. Several times during his deposition he testified that whether the tanks existed and whether they leaked did not concern him, because it was defendants' "responsibility."

Far from relying on misrepresentation, Foss was at best indifferent, since he believed, as he put it at his deposition, the defendants "were responsible" on their contract with him. If Foss relied on anything, it was on the sale contract and his ability to enforce in the courts. As we have said, whether Foss could have brought an action to enforce the contract is not before us.

As a matter of law, Foss did not rely on the misrepresentation that a tank was leaking oil. Reliance on the ability to enforce a contract is not reliance on a misrepresentation it contains.

> The maker of a fraudulent misrepresentation is not liable to one who does not rely upon its truth but upon the expectation that the maker will be held liable in damages for its falsity.

RESTATEMENT (SECOND) OF TORTS, § 548 (1977).[4]

Accordingly, Foss cannot prevail on his tort claim for "fraudulent misrepresentation." And, of course, Patricia cannot prevail on her tort claim for "fraudulent misrepresentation" because no representations whatever were made to her.

## IV. COMMON LAW THEORIES OF CONTRIBUTION AND INDEMNIFICATION

The parties tacitly agree that the release of fuel oil onto land is the discharge of a hazardous substance on the land. To support their claim for contribution, Gregory and Patricia focus on § 144.76(3), STATS.:

> A person who possesses or controls a hazardous substance which is discharged or who causes the discharge of a hazardous substance shall take the actions necessary to restore the environment to the extent practicable and minimize the harmful effects from the discharge to the air, lands or waters of this state.

---

[4] *See also Humphrey v. Merriam*, 20 N.W. 138, 139 (Minn. 1884), where the court said in an action for fraudulent misrepresentation:

[Plaintiff's] reliance upon Carver's statements consisted, not in his belief of their truth, but because he thought, if false, Merriam would be responsible for them. He made his purchase, not because of any belief in their *truthfulness*, but because he thought Merriam would be liable as warrantor to make them good if they proved untrue. On such a state of facts, as the court below well remarked, if plaintiff made out anything, it was a cause of action on a warranty and not for deceit.

Section 144.76(3), STATS., imposes a duty to clean up on a person who possesses or controls a hazardous substance which was discharged even though that person did not cause the discharge. *State v. Mauthe*, 123 Wis. 2d 288, 300, 366 N.W.2d 871, 877 (1985). At the closing, the Fosses became owners of the Old Middleton Theater land. The duty to clean up soil contaminated by a hazardous substance attaches to ownership of the land. *Mauthe*, 123 Wis. 2d at 300, 366 N.W.2d at 877.

The Fosses do not assert that § 144.76(3), STATS., confers on them a right to contribution from another person.[5] They claim a right at common law to contribution from defendants toward their clean up costs.

Contribution, an equitable doctrine, is not limited to any particular type of action, such as a tort action.

> The cause of action [for contribution] that accrues depends not one whit upon the nature of the origin of liability. It is enough that joint liability from whatever source exist. We said in *Wait v. Pierce* (1926), 191 Wis. 202, 226, 209 N.W. 475, 210 N.W. 822:
>
> "Whether the common obligation be imposed by contract or grows out of a tort, the thing that gives rise to the right of contribution is that one of the common obligors has discharged more than his fair equitable share of the common liability."
>
> All contribution claims have in common the characteristic that the party having a right against

---

[5] *C.f., Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 660-61, 476 N.W.2d 593, 602 (Ct. App. 1991) (§§ 144.43 and 144.44(1), STATS., establishing mandatory standards for persons maintaining solid waste landfill sites, did not "evince[] an intent to create a private right of action for violations").

another also liable has discharged more than his share of the liability. It is the bearing of a greater share of a common liability than is justified, and not the source of the underlying liability, that characterizes a cause of action for contribution.

Accordingly, the right of contribution is the same irrespective of its origins. *Brown v. Haertel* (1933), 210 Wis. 354, 358, 244 N.W. 633, 246 N.W. 691.

The nature of this right was discussed in *Bushnell v. Bushnell* (1890), 77 Wis. 435, 46 N.W. 442, where the cause of action for contribution arose out of a contract of surety. The court held that a cause of action for contribution accrued at the time one of the sureties discharged a common liability by making a payment.

*State Farm Mut. Automobile Ins. Co. v. Schara*, 56 Wis. 2d 262, 266, 201 N.W.2d 758, 760 (1972).

■

As that lengthy quotation shows, a joint liability to the same third person is an element of a plaintiff's claim for common law contribution. *Giese v. Montgomery Ward, Inc.*, 111 Wis. 2d 392, 404, 331 N.W.2d 585, 591 (1983), and *Brown v. LaChance*, 165 Wis. 2d 52, 64, 477 N.W.2d 296, 302 (Ct. App. 1991), state the same principle. Indeed, a common liability to the same person is a "prerequisite to a contribution claim." *Rendler v. Markos*, 154 Wis. 2d 420, 433-34, 453 N.W.2d 202, 207 (Ct. App. 1990).

■

The Fosses have not shown that they and Twentieth Century share a common liability to anyone for the clean up. While the Fosses quote § 144.76(3), STATS., to support their claim that they and Twentieth Century have a common liability, they fail to describe or name a

person to whom that liability runs. The statute imposes no liability on a landowner to third persons.

The Fosses base their right to contribution partly on WIS. ADM. CODE § NR 158.05(2). That rule provides that a person who possesses or controls a hazardous substance which is discharged, or who has caused the discharge of the hazardous substance, "shall immediately initiate actions necessary to halt the discharge and to restore the environment to the extent practicable and shall minimize the harmful effects from any discharge to the air, lands or waters of this state." WISCONSIN ADM. CODE § NR 158.05(2) restates the substance of § 144.76(3), STATS., and that statute imposes a duty to clean up but imposes no liability on anyone to anyone.

A common law claim for indemnification requires proof that the plaintiff was compelled to pay damages for which the plaintiff had no liability. *LaChance*, 165 Wis. 2d at 64, 477 N.W.2d at 302. The Fosses voluntarily acquired the theater property. As owners of the property, they have a duty under § 144.76(3), STATS., as the person who "possesses or controls a hazardous substance which is discharged" to clean up the property. *Mauthe*, 123 Wis. 2d at 300, 366 N.W.2d at 877. When the Fosses undertook to clean up their property, they discharged their duty as its owner. They have not been compelled to pay damages for which they had no liability, and they therefore have no claim for indemnification from defendants.

## V. NEW EVIDENCE

On May 26, 1994, the trial court granted defendants' motion for summary judgment dismissing the Fosses' claims with exceptions not pertinent to this

discussion and denied the Fosses' motion for summary judgment on his contribution/indemnification claim. Both sides moved for reconsideration, and on October 28 the court granted defendants' motion and denied the Fosses' motion.

Meanwhile, Gregory Foss learned that Stanley Goodrich, an ex-employee of Twentieth Century whose deposition Foss had taken, had said that he knew of a leak in one of the tanks years before the Fosses took title to the property. On September 30, 1994, the Fosses' counsel took a sworn statement from Goodrich describing his knowledge and the knowledge of another employee along the same lines. One working day after the trial court issued its October 28 decision and order on the motions for reconsideration, the Fosses moved under § 806.07, STATS., to vacate the court's previous orders with a view to taking evidence from Goodrich. The court denied the motion.

The trial court criticized the Fosses' failure to promptly bring to its attention the information Foss obtained from Goodrich before the court issued its October 28, 1994 decision. However, the dispositive reason for the court's refusal to vacate its prior orders was that Goodrich's statement would not change the result, the court having dismissed Gregory Foss's misrepresentation claim because he had not relied on Twentieth Century's representations to him.

We join the trial court's reasoning. Goodrich's statement cannot save the complaint from dismissal. We affirm the trial court's exercise of discretion under § 806.07, STATS.

## VI. CONCLUSION

Because there is no genuine issue of material fact which must be tried, we must affirm the judgment dismissing the amended complaint and denying Fosses' motion for summary judgment on the contribution claim, and we affirm the order denying the motion to reopen.

*By the Court.*—Judgment and order affirmed.