Roger T. LAMBERT and Jean A. Lambert, Plaintiffs-Appellants,†

v.

Yvonne HEIN and Re/Max Realty 100, c/o Thomas Boliaris, Defendants-Respondents.

Court of Appeals

*No. 97–0708. Submitted on briefs March 12, 1998.—Decided April 22, 1998.*

(Also reported in 582 N.W.2d 84.)

†Petition to review denied.

712

713

715

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Mark E. Sostarich* of *Petrie & Stocking S.C.* of Milwaukee, and *Roger T. Lambert* of *Law Offices of Roger T. Lambert* of Wauwatosa.

On behalf of the defendant-respondent Yvonne Hein, the cause was submitted on the brief of *Daniel G. Brennan* of *Brennan & Brennan* of Milwaukee, on behalf of the defendant-respondent Re/Max Realty 100, the cause was submitted on the brief of *Alan H. Deutch* of *Deutch & Greenberg* of Milwaukee.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

NETTESHEIM, J.  Following a bench trial, the trial court dismissed Roger T. and Jean A. Lambert's

amended complaint against Yvonne Hein and Re/Max Realty 100. The Lamberts' action resulted from their purchase of Hein's residence for which Re/Max served as Hein's broker. The Lamberts' amended complaint alleged deceptive advertising pursuant to § 100.18, STATS., breach of contract, misrepresentation, and breach of warranty.

On appeal, the Lamberts claim that the trial court: (1) erroneously exercised its discretion in granting Re/Max an extension of the time in which to answer the Lamberts' amended complaint, (2) erroneously denied the Lamberts' motion for summary judgment, and (3) erroneously ruled that the Lamberts' decision to close the transaction resulted in a waiver of their breach of warranty and misrepresentation claims. We reject each of the Lamberts' arguments. We affirm the judgment.

## BACKGROUND

In early January 1992, Hein listed her home in Brookfield, Wisconsin, with Re/Max through Robert Zingsheim, a licensed Re/Max broker. The home had been built for Hein and her former husband, Richard, in 1983. Prior to obtaining the listing, Zingsheim did a "walk-through" of the home, noting its condition. During his second walk-through, Zingsheim noticed that on "the west basement wall there was one effervescent [water stain] mark maybe a foot or two long." When Zingsheim inquired about the mark, Hein informed him that the mark was due to a leaking downspout which had since been repaired.

Following his inspection, Zingsheim asked Hein to fill out a Seller's Real Estate Condition Report. Because Hein was not familiar with the "mechanical systems" of the home, the form was completed by Rich-

ard on January 3, 1992. In response to that portion of the report which asks the seller to disclose whether any dampness exists or has ever existed in the basement of the home, Richard marked "yes" noting the "northwest corner" and "downspout came off."

The Lamberts viewed Hein's house in January and received Hein's seller's condition report in early February. On February 26, 1992, the Lamberts made an offer to purchase Hein's home. Hein responded with a counteroffer on February 28. The Lamberts accepted the counteroffer on March 2.

Following a second viewing of the home on March 12, 1992, the Lamberts became concerned about possible cracks and water problems in the basement walls. The Lamberts, Hein and Re/Max each obtained an expert inspection of the basement. Each of the reports submitted by the experts confirmed the efflorescence[1] noted on the Hein's condition report. The reports further agreed that the problem was more serious than the disconnected downspout, as represented in Hein's condition report. However, the experts were in disagreement as to the best method for remediating the problem.

On March 20, 1992, Roger Lambert sent a letter to Zingsheim stating that he and Jean were willing to go forward with the transaction but "with a full reservation of all rights in requiring the sellers to have the real

---

[1] The expert reports use the terms "effervescence" and "efflorescence" interchangeably. Hein's expert, Brian Juedes of Computerized Structural Design, Inc., stated in his report that "[e]fflorescence occurs when water passes through the block, dissolves salts in the block and/or mortar, and deposits the salts of the block surface when the water evaporates. The cause of efflorescence is water. The cure for efflorescence is to eliminate the water."

718

estate placed into the condition as was covenanted in the sellers' condition report." The letter specifically referenced the water problems in the basement of the home. In response, Zingsheim contacted the Lamberts to inform them that Hein had declared their offer "null and void" and had directed the return of their earnest monies. The Lamberts rejected Hein's attempted recission and instead reconfirmed their desire to move forward with the transaction. The Lamberts informed Hein that they would pursue legal action if she did not convey the property in accordance with the terms of the existing contract.

On April 13, 1992, while the sale was still pending, the Lamberts filed this action seeking specific performance of the sale and damages for the cost of remediating the water damage. The complaint alleged intentional, negligent and strict responsibility misrepresentation, plus breach of contract. Hein and Re/Max answered separately. Approximately one month later, on May 15, with the lawsuit still pending, the parties closed the transaction.

Following the closing, the Lamberts filed an amended complaint deleting their request for specific performance and adding claims grounded in breach of warranty, deceptive advertising and unfair trade practices. Re/Max failed to respond to the amended complaint within the required time period.

On November 5, 1993, the Lamberts filed a motion for partial summary judgment against Hein on the issues of liability regarding the breach of contract and misrepresentation claims. The Lamberts additionally requested summary judgment against Re/Max on the issues of liability for misrepresentation and a default judgment on the deceptive advertising claim due to

Re/Max's failure to file a timely response to the amended complaint.

On November 29, 1993, Re/Max filed a motion requesting an extension of the time period in which to answer the Lamberts' amended complaint and file a counterclaim. The motion was accompanied by Re/Max's answer to the amended complaint and its brief in opposition to summary judgment.

The trial court conducted a hearing on the motions on December 6, 1993. The trial court granted Re/Max's motion for an extension after finding "excusable neglect" on the part of Re/Max's counsel. The trial court also denied the Lambert's summary judgment motion stating: "[B]ecause there are issues of fact as to whether there was concealment of the true condition of the property before and after closing summary judgment cannot be granted."

The matter proceeded to a bench trial. At the conclusion, the trial court rendered its oral decision in favor of the defendants. In its written findings of fact, the court stated that "any [damages] suffered by the plaintiffs were solely the results of their own actions. The [Lamberts] proceeded with this transaction when they were not legally, practically or monetarily required to do so and when they had full knowledge of the defective condition of the basement." The court also concluded that "[n]one of the defendants made any false representations concerning the home and there was also no intent to defraud the plaintiffs. Further, there was no false advertising. . . . The plaintiffs, by their own actions, waived any defects, in any way, relating to the basement." The Lamberts appeal.

## DISCUSSION

*Extension of Time Limits to Answer*

The Lamberts argue that the trial court erroneously exercised its discretion when it granted Re/Max an extension of time to answer the amended complaint. The Lamberts contend that "the record was devoid of a reasonable basis for a finding of excusable neglect as required by § 801.15(2), Stats."

Section 802.09(1), STATS., requires a defendant to serve an answer upon the plaintiff within twenty days after service of an amended complaint. However, § 801.15(2)(a), STATS., permits the trial court to enlarge the time for serving an answer. A trial court may, in its discretion, grant relief under § 801.15(2)(a) if it finds that: (1) the noncompliance was due to excusable neglect, and (2) an enlargement of time would serve the interests of justice, that is, whether the party seeking relief acted in good faith and whether the opposing party would be prejudiced by the time delay. *See Sentry Ins. v. Royal Ins. Co.*, 196 Wis. 2d 907, 915, 539 N.W.2d 911, 914 (Ct. App. 1995). We will not disturb a discretionary determination as long as the record shows that the trial court logically interpreted the facts and applied the proper legal standard to them. *See Gerth v. American Star Ins. Co.*, 166 Wis. 2d 1000, 1006–07, 480 N.W.2d 836, 839 (Ct. App. 1992).

At the motion hearing, Re/Max's counsel explained that although he had written a response to the Lamberts' amended complaint, the response was not timely filed because it had been erased from his computer diskette without his knowledge. As a result, he was not aware that the response had not been mailed by his secretary. Counsel further explained that when the

problem was discovered he promptly replied to the amended complaint. The trial court accepted this explanation and concluded that it constituted "excusable neglect in this particular instance."

We agree. This was not a case in which Re/Max's counsel had ignored the litigation. In fact, counsel had already filed a timely answer to the Lamberts' initial complaint. In addition, while the amended complaint changed some of the claims, its factual underpinning remained the same as that for the original complaint. The trial court's allowance of the tardy answer to the amended complaint worked no prejudice to the merits of the Lamberts' case. Therefore, we agree with the trial court's further determination that it would be unfair to visit the harm of a default judgment against Re/Max for its counsel's failure to file a timely response to the amended complaint.

In summary, the trial court's analysis reveals an examination of the relevant facts and a reasoned application of the appropriate legal standards. We therefore uphold the court's discretionary ruling.

## Summary Judgment Issues

The Lamberts next argue that the trial court erroneously denied their motion for summary judgment as to their breach of contract claim against Hein and as to their misrepresentation claims against both Hein and Re/Max. We independently decide whether summary judgment is appropriate without giving deference to the trial court's ruling. *See Schaller v. Marine Nat'l Bank*, 131 Wis. 2d 389, 394, 388 N.W.2d 645, 648 (Ct. App. 1986). Nonetheless, we value a trial court's ruling on such a matter. *See Scheunemann v. City of West*

*Bend,* 179 Wis. 2d 469, 475–76, 507 N.W.2d 163, 165 (Ct. App. 1993).

Summary judgment is appropriate in cases where there is no genuine issue of material fact and the moving party has established entitlement to judgment as a matter of law. *See Germanotta v. National Indem. Co.,* 119 Wis. 2d 293, 296, 349 N.W.2d 733, 735 (Ct. App. 1984). If a dispute of any material fact exists, or if the material presented on the motion is subject to conflicting factual interpretations or inferences, summary judgment must be denied. *See State Bank of La Crosse v. Elsen,* 128 Wis. 2d 508, 512, 383 N.W.2d 916, 918 (Ct. App. 1986).

The Lamberts break their argument into six subissues, some of which pertain to the summary judgment record and some of which simply represent legal statements.[2] However, we need not address all of these

[2] The Lamberts' issues are as follows: (1) Hein and Re/Max failed to submit evidence which would create a genuine issue of material fact regarding the enforceability of the contract; (2) Hein and Re/Max failed to submit evidence against the breach of warranty claim; (3) Re/Max's dissemination of the warranty in Hein's condition report was a violation of the deceptive trade practices statute, § 100.18, STATS.; (4) Hein's lack of notice or knowledge of a defect is not a defense to the breach of warranty claim; (5) Hein's condition report contained warranties upon which the Lamberts were entitled to rely; and (6) a buyer has no duty to inspect the real estate when provided with a preoffer express warranty. The Lamberts' argument regarding this final issue relates to a statement made by the trial court at the trial, not at the summary judgment proceedings. We will address this argument later in this opinion when we address the trial issues.

arguments individually[3] because the resolution of some of the Lamberts' claims required a factual determination regarding the state of Hein's and Re/Max's knowledge and also whether the statements by Re/Max were true representations or mere "puffery."[4] More importantly, all of the Lamberts' claims required the court to factually resolve whether the Lamberts justifiably or negligently relied on any representations or warranties since they knew of the defect via their own expert inspection prior to the closing. *See* WIS J I—CIVIL 2401, 2402 & 2403. The trial court saw these

---

[3] "An appellate court is not a performing bear, required to dance to each and every tune played on an appeal." *State v. Waste Management of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147, 151 (1978).

[4] The Lamberts maintained that Zingsheim's use of the term "quality construction" on the seller's information report was tantamount to a warranty or representation as to the condition of the property. However, Zingsheim testified that the term was merely "puffery" commonly used in the real estate business. The trial court found that "the issue of whether or not the phrase 'quality construction' represents an affirmation or representation that there are no water problems or no water damage problems, that connection . . . has to be made by a trier of fact." We agree.

The Lamberts acknowledge that in *Ewers v. Eisenzoph*, 88 Wis. 2d 482, 489–91, 276 N.W.2d 802, 805–06 (1979), our supreme court stated that whether "puffery" may be construed as a warranty depends upon the objective context in which the statement is made. Based on the competing affidavits, we conclude that the trial court properly denied summary judgment on this issue. Based on the genuine issues of material fact which exist regarding Re/Max's actions, we further conclude that the trial court properly denied summary judgment on the issue of Re/Max's liability due to deceptive advertising.

as significant issues of fact and prudently declined to award summary judgment to the Lamberts.[5]

We do, however, further address on the merits the Lamberts' argument that the trial court improperly considered an unsigned affidavit by Hein. In this document, Hein contended that she never signed the seller's condition report prepared by her former husband and that she had no knowledge of the water problems in the basement beyond the effervescence that she disclosed to the Lamberts. The Lamberts argue that this document was incompetent summary judgment evidence pursuant to § 802.08, STATS.

However, all of the statements in Hein's unsworn affidavit were supported by her sworn deposition testimony which the trial court cited in support of its decision. The court said, "With respect to Ms. Hein, looking at her deposition testimony and the circumstances surrounding the transaction, I cannot find that there is not a dispute as to what her actions or inactions add up to, what her knowledge or lack of knowledge was of the condition." Therefore, even absent the unsigned affidavit, Hein's deposition testi-

[5] In opposition to the Lamberts' summary judgment motion, Re/Max pointed to language from the offer to purchase which states: "Buyer acknowledges that broker(s) has/have made no warranties or representations either in the property condition report or in this offer to purchase." On the surface, this language would seem to entitle Re/Max, not the Lamberts, to summary judgment on the breach of warranty question. However, Re/Max did not seek summary judgment. In addition, the Lamberts challenged the enforcement of this integration clause—an issue we do not address because we later hold that the Lamberts waived the defect and the warranty by proceeding with the closing.

mony supplied the same information. We conclude that Hein's deposition testimony regarding her knowledge of the water problems raised a genuine issue of material fact as to the Lamberts' claims of misrepresentation.

We hold that the trial court properly denied the Lamberts' motion for summary judgment.

## Trial Issues

### A. Breach of Warranty

We next turn to the Lamberts' challenge to the trial court's rejection of their breach of warranty claim. The trial court determined that the Lamberts waived this claim by choosing to close the transaction while knowing of the defect.

The Lamberts contend that their "post contract, but pre-closing, discovery of adverse material defects which were inconsistent with the express warranties of condition contained in [Hein's] real estate condition report did not require [them] to either rescind the transaction, or waive the defects and accept the real estate in an 'as is' condition." The Lamberts argue that they had an "expectation interest" in the property at the time the offer to purchase was accepted and that their right to claim a breach of express warranty was not affected by their subsequent discovery of the structural defect. We disagree.

In the accompanying footnote, we set out the full terms of the condition report and property inspection provisions of the contract.[6] We briefly summarize those provisions here. The contract permits the buyers to submit a disapproval of the seller's property condition

---

[6] The relevant language in the offer to purchase pertaining to the condition report and the property inspection is as follows:

726

report. In addition, the contract encourages the buyers to obtain their own inspection of the property. If the buyers' inspection reveals a defect, the contract permits the buyers to disapprove the seller's condition report. If the buyers submit such written disapproval, the offer is "null and void and all earnest money

> B. This offer to purchase is contingent upon Buyer receiving a copy of a signed Seller's Property Condition Report which shall be submitted to Buyer within two days of acceptance. Buyers failure to submit written disapproval of the signed Seller's Property Condition Report within two days of receipt shall constitute an approval of the report and an acceptance of the property in the condition disclosed. In the event there is a property inspection as stated below, the time for submission of a disapproval of the property condition shall be extended to coincide with the date for submission of unacceptable defects or disapproval as stated below.
>
> **BUYER ACKNOWLEDGES THAT BROKER(S) HAS/HAVE MADE NO WARRANTIES OR REPRESENTATIONS EITHER IN THE PROPERTY CONDITION REPORT OR IN THIS OFFER TO PURCHASE.**
>
> . . . .
>
> Many factors and conditions affecting the property, including defects, may not be apparent from a visual inspection of the accessible areas of the property by either the Buyer or Broker.
>
> **BROKER RECOMMENDS THAT BUYER OBTAIN PROFESSIONAL ADVICE AND A PROFESSIONAL INSPECTION OF THE PROPERTY . . . .**
>
> [I]f buyer does not have such inspection performed, or, if performed, does not submit written disapproval, based on such inspection . . . within 14 days after acceptance of this offer, it is agreed and understood that Buyer shall accept the subject property "as is" and in its present condition, provided, however, that warranties and representations of Seller, if any, set forth in the Offer to Purchase and in the Seller's Condition Report shall survive the closing. If such written disapproval is timely and properly submitted, this offer shall be null and void and all earnest money returned to Buyer. . . .
>
> Buyer and Seller agree to provide the other party with photocopies of the written results of any inspection reports received by or performed on behalf of, either party.

returned to Buyer." However, if the buyers do not submit a written disapproval, then the buyers accept the property " 'as is' and in its present condition, provided, however, that warranties and representations of Seller, if any, set forth in the Offer to Purchase and in the Seller's Condition Report shall survive the closing."

In this case, the Lamberts did not submit a written disapproval to Hein's property condition report prior to their own expert's inspection.[7] However, they did thereafter have the basement of the home inspected by their expert. Following this inspection, Roger Lambert notified Re/Max in his letter of March 20, 1992, that the house was not in the condition "covenanted in the sellers' condition report." The letter described in detail the water problems in the basement of the home. Nonetheless, Roger expressly stated that he and his wife were "ready, willing and able to complete the purchase agreement . . . ."

Here, the parties' contract clearly spells out that the offer becomes null and void when the buyer disapproves the seller's condition report. But Roger's letter to Re/Max, although noting the defect, expressly affirmed, rather than rejected, the contract. We therefore reject Re/Max's threshold argument that the letter constituted a disapproval of Hein's property condition report and that the contract became null and void.

When the buyer does not disapprove the seller's property condition report, the contract says that the buyer takes the property " 'as is' and in its present condition . . . ." However, this "as is" acceptance of the property is qualified by the further phrase "provided, however, that warranties and representations of Seller . . . in the Offer to Purchase and in the Seller's Condi-

[7] This was understandable since the Lamberts did not have notice of the seriousness or source of the problem at that time.

tion Report shall survive the closing." Based on this added language, the Lamberts contend that they were entitled to close on the transaction and sue on the defect. Thus, our task is to decide whether the "as is" provision can be reconciled with the survival of warranty provision when the buyer has prior notice of the defect but still chooses to close the transaction.

[7]

In this regard, we conclude that the contract is ambiguous. While warranties and representations *unrelated* to the disclosed defect clearly survive the closing, it is unclear from this contract language whether warranties and representations *relating to a defect revealed by the buyer's own inspection* survive in the face of the "as is" provision. When a contract is ambiguous and when the parties put different constructions on the language, we look to the purpose of the contract and the circumstances surrounding its execution to determine the parties' intent. *See Jones v. Jenkins*, 88 Wis. 2d 712, 723, 277 N.W.2d 815, 819 (1979).

Despite the contract's ambiguity as to the consequences when the buyers have prior notice of a defect but nonetheless choose to close the transaction, there is no uncertainty about the purposes of the contract's inspection and disapproval procedures. These provisions are intended to afford a buyer the opportunity to discover actual or potential defects in the property so that the buyer can then make an informed choice whether to proceed with the transaction, whether to seek amendments to the terms of the contract, or whether to abort the contract. Thus, these provisions avoid the prospect of future disputes and possible litigation. The Lamberts' reading of these provisions runs contrary to these goals. Instead, they seek to use these

729

provisions as armament for litigation. We reject that interpretation because it turns the purpose of the inspection/disapproval process against itself.

The commonsense of our, and the trial court's, interpretation is readily demonstrated when we apply it to the facts of this case. Following their own expert's inspection of the property, and their discovery of the true nature of the defect, the Lamberts' understanding of the "as is" condition of the house was no longer defined only in terms of Hein's representations on her condition report. Instead, the Lamberts' understanding of the "as is" condition now included the added information from their own expert regarding the seriousness of the water problems.

The Lamberts would have us freeze this situation to that time frame when they accepted Hein's counteroffer to purchase. That approach is too restrictive because the contract itself envisioned possible future developments which could alter the parties' rights and responsibilities. Thus, this was a fluid, not a frozen, situation. We therefore agree with the trial court that this transaction proceeded to closing on an "as is" basis and that the Lamberts waived any claims based on prior warranties or representations relating to the disclosed defect by choosing to close the transaction.

### B. Misrepresentation

Much of what we have just said governs the Lamberts' further challenge to the trial court's rejection of their misrepresentation claims.

As to this issue, the Lamberts first argue that the trial court erred in its application of the law of misrepresentation by ruling that a buyer has a duty to inspect

real estate.[8] We disagree that the trial court made such an all-encompassing ruling.[9] The court observed that the inspection process allows for an "option" to inspect—"to discover things that might be hidden to the untrained eye . . . ." The trial court then concluded that once the inspection was made and the defect discovered, the Lamberts were negligent in further relying upon the representations made in the seller's condition report. Thus, the court was not imposing a threshold duty on the Lamberts to inspect the property. Rather, the court was properly speaking to the Lamberts' obligations to act prudently once they had discovered the true nature of the defect.

The trial court's remarks were in keeping with the law. As we have already noted, the law of strict responsibility misrepresentation and intentional misrepresentation requires that the buyer's reliance be justifiable. *See* WIS JI—CIVIL 2401 & 2402. In addition, negligent misrepresentation inquires whether the buyer was negligent in relying upon the representation. *See id.*; *see also* WIS JI—CIVIL 2403.

Echoing their breach of warranty argument, the Lamberts again contend that the rights of a buyer and seller under the law of misrepresentation are frozen as of the time of the offer to purchase and that "[i]nformation discovered after the contract was formed cannot be material to the enforceability of a

---

[8] As we have previously noted, the Lamberts make this argument in the portion of their brief challenging the summary judgment. *See supra* note 2. But the court never addressed this issue at summary judgment. The trial court's remark upon which the Lamberts base this argument was made at trial.

[9] We note that the Lamberts' brief does not contain a cite to those statements by the trial court upon which they base their argument.

contract." Again, we disagree. As we previously noted when discussing the Lamberts' warranty claims, the inspection and disapproval provisions of this contract envisioned possible future developments which could alter the parties' rights and responsibilities under the agreement. Again, this was a fluid, not a frozen, situation.

*Foss v. Madison Twentieth Century Theater, Inc.*, 203 Wis. 2d 210, 551 N.W.2d 862 (Ct. App. 1996), supports our holding. There, Foss entered into an offer to purchase land from the seller. Prior to closing, Foss discovered the existence of underground storage tanks on the property. *See id.* at 214–15, 551 N.W.2d at 864. Although the seller knew of the tanks' existence at the time the offer was made, it did not inform Foss about them, nor did Foss inform the seller that he had learned of the tanks' existence following its acceptance of his offer to purchase. Instead, Foss proceeded to close on the property. *See id.* at 215–16, 551 N.W.2d at 864–65. Based on a claim of fraudulent misrepresentation, Foss later sought damages and costs from Twentieth Century for the expenses he incurred in removing the tanks from the property. *See id.* at 213, 551 N.W.2d at 863.

We stated that to succeed on a claim of fraudulent misrepresentation, "the representation must have been false, and [the buyer] must have believed the representation was true and relied on it to his damage." *Id.* at 218, 551 N.W.2d at 865. Thus, when a buyer learns that a misrepresentation has been made prior to closing, the buyer is no longer deceived and, as a matter of law, can no longer rely upon the prior representation. *See id.* at 218–19, 551 N.W.2d at 865–66. The relevant facts here are similar. The Lamberts knew of the defect

but nonetheless chose to close the transaction. The fact that they attempted to reserve their rights, whereas Foss did not, does not change the result.

## CONCLUSION

We conclude that the trial court did not erroneously exercise its discretion when it granted Re/Max a time extension to respond to the Lamberts' amended complaint. We further conclude that genuine issues of material fact existed which precluded the award of summary judgment to the Lamberts. Finally, we affirm the trial court's holding that the Lamberts waived their warranty and misrepresentation claims by choosing to complete the transaction while knowing of the defect.

We affirm the judgment dismissing the amended complaint.

*By the Court.*—Judgment affirmed.