John MALZEWSKI and Jennifer Malzewski,
Plaintiffs-Appellants,†

v.

Sheldon RAPKIN and Mae Louise RAPKIN,
Defendants-Respondents,††

ACUITY, A MUTUAL INSURANCE COMPANY,
Intervening Defendant.

Court of Appeals

*No. 2005AP1007. Submitted on briefs June 13, 2006.
—Decided August 8, 2006.*

**2006 WI App 183**

(Also reported in 723 N.W.2d 156.)

† Petition to review denied 12/5/06.
†† Petition to cross review denied 12/5/06.

98

99

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Rudolph J. Kuss* and *Daniel W. Stevens*, of *the Law Office of Daniel W. Stevens, LLC*, of Brookfield.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Thomas J. Donnelly* of *Emile Banks & Associates, LLC*, of Milwaukee.

Before Fine, Curley and Kessler, JJ.

¶ 1. FINE, J. John and Jennifer Malzewski appeal the trial court's grant of summary judgment dismissing their breach-of-contract, misrepresentation, and false-advertising claims against Sheldon and Mae Louise Rapkin.[1] The trial court granted summary judgment to the Rapkins. We affirm the trial court's dismissal of the Malzewskis' breach-of-contract and misrepresentation claims, but reverse on their fraudulent-advertising claim.

---

[1] Acuity sought to intervene in the Malzewskis' suit against the Rapkins, contending that the scope of its obligations to the Rapkins under their home owner's insurance policy was at issue. Acuity withdrew its motion to intervene when the trial court granted the Rapkins' motion for summary judgment.

¶ 2. In August of 2003, the Malzewskis offered to buy a house from the Rapkins. The Offer to Purchase provided:

> PROPERTY CONDITION REPRESENTATIONS: Seller represents to Buyer that as of the date of acceptance Seller has no notice or knowledge of conditions affecting the Property or transaction (see below) other than those identified in Seller's Real Estate Condition Report dated 5/2/03, which was received by Buyer prior to Buyer signing this Offer and which is made a part of this Offer by reference.

*See* Wis. Stat. ch. 709 (disclosure requirements for residential real estate sales). The Rapkins agreed to be responsible for these representations by signing the Offer to Purchase and checking a box on the Real Estate Condition Report, which they also signed, that indicated that they were "aware of defects in the basement or foundation (including cracks, seepage and bulges)." They explained on the form that "[d]uring very heavy rainstorms, there might be a little seepage in the walls/floors. The seller has regraded to correct this when it has happened." The Real Estate Condition Report tracked the language of Wis. Stat. § 709.03 and defined a "defect" as "a condition that would have a significant adverse effect on the value of the property; that would significantly impair the health or safety of future occupants of the property; or that if not repaired, removed or replaced would significantly shorten or adversely affect the expected normal life of the premises."

¶ 3. The Malzewskis' Offer to Purchase also had an inspection contingency, which made the sale of the house contingent on the home passing inspection:

> This Offer is contingent upon a Wisconsin registered home inspector performing a home inspection of the Property, and an inspection, by a qualified independent inspector, of Buyer's Choice which discloses no defects as defined below. This contingency shall be deemed satisfied unless Buyer, within 10 days of acceptance, delivers to Seller, and to listing broker if Property is listed, a copy of the inspector's written inspection report(s) and a written notice listing the defect(s) identified in the inspection report(s) to which Buyer objects.

Additionally, the Malzewskis conditioned their purchase of the Rapkins' house on their being allowed to "do a walk-through within 3 working days of acceptance." An Addendum to the Offer to Purchase, referenced the inspection contingency and recommended that the home be formally inspected: "Many factors and conditions affecting the Property, including defects, may not be apparent from a visual inspection of the accessible areas of the Property by either Buyer or Broker. Broker recommends that Buyer obtain professional advice and a professional inspection of the Property by a Wisconsin registered home inspector." (Bolding and capitalization omitted.)

¶ 4. The Malzewskis exercised their right to walk through the house, and, according to their submissions to the trial court, they did not notice any defects. They then waived their right to have the home inspected, and bought the house in September of 2003.

¶ 5. In the early summer of 2004, paint on the basement walls peeled away and some pre-existing cracks in the basement walls opened. The Malzewskis hired an engineer to evaluate the walls' condition. The engineer told them that the basement walls, which he estimated had been cracked for many years, were failing and would have to be fixed. A foundations contractor

estimated that it would cost $25,600 to repair the basement walls.

¶ 6. The Malzewskis sued the Rapkins for failing to disclose the cracks in the basement walls under the following theories: (1) breach of contract and breach of warranty; (2) intentional misrepresentation; (3) misrepresentation in violation of WIS. STAT. § 895.80 (renumbered as WIS. STAT. § 895.446 effective April 5, 2006), which provides a civil remedy for the violation of WIS. STAT. § 943.20(1)(d) (theft-by-fraud); (4) misrepresentation in violation of WIS. STAT. § 100.18 (false advertising); (5) strict-responsibility misrepresentation; and (6) negligent misrepresentation. The Malzewskis sought money damages, or alternatively, rescission and restitution.

¶ 7. During discovery, the Rapkins admitted in answers to interrogatories that when they owned the house, the basement walls had twelve-foot long, three-eighths-inch wide cracks, which they filled-in ten to twenty times "using masonry cement in a calking tube." According to the Rapkins, they painted the walls approximately five times and also touched them up after they had filled-in the cracks. The Rapkins claimed in their interrogatory answers that they never had anyone look at the house's basement or foundation to get a repair estimate.

¶ 8. The Rapkins moved for summary judgment, claiming that they had fully disclosed the condition of the house on the Real Estate Condition Report, and that there was no evidence that they knew the cracks were a "defect" as defined by the Real Estate Condition Report and WIS. STAT. § 709.03:

> In essence, our position is that the Court should not allow this claim to continue where the plaintiffs in

> opting to save $300 for [a] home inspection which is mentioned and recommended twice in the sale documents in the standard real estate purchase forms for something that they opted to originally have and waive that home inspection contingency for a condition, cracks in the basement wall, which there has been no showing that the Rapkins had any knowledge as to the significance.

In an affidavit attached to the motion, Sheldon Rapkin averred that he had lived in the house for thirty years and that during that time there were no signs of any "structural defects." He also claimed that he "never had any verbal [*sic* oral] conversations with the [Malzewskis] and did not meet the [Malzewskis] until after the real estate closing." Mae Louise Rapkin admitted that while she met John Malzewski once, she "did not speak to John Malzewski at any time about the condition of the house."

¶ 9. The Malzewskis contended that there were questions of fact both as to whether the Rapkins intended to deceive them when the Rapkins represented that the only problem in the basement was "a little seepage," and, also, as to whether the Malzewskis were justified in relying on that representation. *See, e.g., Ramsden v. Farm Credit Servs. of N. Cent. Wis. ACA,* 223 Wis. 2d 704, 718–719, 590 N.W.2d 1, 7 (Ct. App. 1998) (elements of intentional misrepresentation include intent to deceive and justifiable reliance). John Malzewski averred in his affidavit submitted in opposition to the Rapkins' motion for summary judgment that he was "aware of the minor seepage problems and that [they were] not a concern to" him. He also claimed that "[h]ad the sellers informed me that the walls had repeatedly cracked and they repeatedly filled the cracks in with caulk and painted over them, I would not have purchased the house."

107

¶ 10. As we have seen, the trial court granted the Rapkins' motion for summary judgment. The trial court concluded as a matter of law that the Rapkins did not know there was a defect in the house: "that fact which is essential to the plaintiffs' claim of showing the defendants knew there was a defect in the house has not been met; and since that essential element has not been met, the motion for summary judgment should be granted."

## II.

■

¶ 11. We review *de novo* a trial court's decision to grant or deny summary judgment, and use the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). A court must grant summary judgment when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. Wis. Stat. Rule 802.08(2).

¶ 12. The Malzewskis contend that the trial court should not have granted summary judgment because whether the Rapkins believed that the cracks in the basement wall were a "defect" that should have been disclosed in the Real Estate Condition Report is a disputed question of material fact that cannot be decided on summary judgment. As we discuss below, for all but one of the Malzewskis' claims, however, the Malzewskis must show that they reasonably relied on the Rapkins' Real Estate Condition Report and its alleged failure to disclose the true nature of the problems with the basement. *See Aon Risk Servs., Inc. v. Liebenstein*, 2006 WI App 4, ¶ 7, 289 Wis. 2d 127, 143, 710 N.W.2d 175, 182 ("In order to survive summary judgment, the party with the burden of proof on an

element in the case must establish that there is at least a genuine issue of fact on that element by submitting evidentiary material 'set[ting] forth specific facts,' Wis. Stat. Rule 802.08(3), pertinent to that element."), *language relying on court of appeals decision in Burbank Grease withdrawn by Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 33, 294 Wis. 2d 274, 298, 717 N.W.2d 781, 793–794.

¶ 13. As we have seen, the Malzewskis' complaint asserted claims under the following theories: (1) breach of contract and breach of warranty; (2) intentional misrepresentation; (3) misrepresentation in violation of Wis. Stat. § 895.80 (renumbered as Wis. Stat. § 895.446 effective April 5, 2006), which provides a civil remedy for the violation of Wis. Stat. § 943.20(1)(d) (theft-by-fraud); (4) misrepresentation in violation of Wis. Stat. § 100.18 (false advertising); (5) strict-responsibility misrepresentation; and (6) negligent misrepresentation. We address each claim in turn.

A. *Breach of contract and breach of warranty.*

¶ 14. The elements of an express warranty are: (1) an affirmation of fact; (2) inducement to the buyer; and (3) reliance by the buyer. *Selzer v. Brunsell Bros., Ltd.*, 2002 WI App 232, ¶ 13, 257 Wis. 2d 809, 820, 652 N.W.2d 806, 811. In their complaint, the Malzewskis alleged that the Rapkins breached their contractual warranty with the Malzewskis when they falsely represented that the only problem with the basement was slight seepage. They do not refer to any clause in any contract other than the Real Estate Condition Report. Having waived their right to have the Rapkins' home inspected before closing on the property, however, the Malzewskis' reliance on the

Rapkins' Real Estate Condition Report was unreasonable as a matter of law. *See Lambert v. Hein*, 218 Wis. 2d 712, 726–730, 582 N.W.2d 84, 90–92 (Ct. App. 1998).

¶ 15. In *Lambert*, home-buyers went ahead with a home purchase even though: (1) they knew of the defects that they contended breached the sellers' contractual warranty, and (2) the real-estate contract permitted them to not close on the property. *Ibid.*

> The trial court then concluded that once the inspection was made and the defect discovered, the Lamberts were negligent in further relying upon the representations made in the seller's condition report. Thus, the court was not imposing a threshold duty on the Lamberts to inspect the property. Rather, the court was properly speaking to the Lamberts' obligations to act prudently once they had discovered the true nature of the defect.

*Id.*, 218 Wis. 2d at 731, 582 N.W.2d at 92. Although there was a trial in *Lambert*, the principle applied in *Lambert* applies here: a buyer aware of the "true nature" of defects, or who has the right to discover the "true nature" of defects *that are disclosed*, cannot later complain when he or she goes ahead with the purchase: (1) despite knowing about the defects, or (2) after giving up a right under the contract to discover their "true nature."

> These provisions are intended to afford a buyer the opportunity to discover actual or potential defects in the property so that the buyer can then make an informed choice whether to proceed with the transaction, whether to seek amendments to the terms of the contract, or whether to abort the contract. Thus, these provisions avoid the prospect of future disputes and possible litigation.

*Id.*, 218 Wis. 2d at 729, 582 N.W.2d at 91.

110

¶ 16. The Rapkins disclosed in the Real Estate Condition Report that "there might be a little seepage in the walls/floors" of the basement. *See* WIS. STAT. ch. 709 (sellers of residential real estate required to disclose property's condition in Real Estate Condition Report). Despite this information, the Malzewskis waived the home inspection; they thus waived their right to legal remedies to which they might have been entitled if they had to rely wholly on disclosures in the Real Estate Condition Report without the right to have the home inspected. Stated another way, by closing the transaction without exercising their right to a home inspection even though they were aware of, at the very least, potential "defects," the Malzewskis waived their right to pursue a contractual warranty claim based on representations in the Real Estate Condition Report.

B. *Intentional misrepresentation.*

■

¶ 17. The elements of intentional misrepresentation are: (1) the defendant made a representation of fact; (2) the representation was untrue; (3) the defendant made the representation either knowing that it was untrue, or recklessly not caring whether it was true or false; (4) the defendant made the representation with the intent to deceive the plaintiff in order to induce the plaintiff to act on it to plaintiff's pecuniary damage; and (5) the plaintiff believed that the representation was true and relied on it. *Ramsden*, 223 Wis. 2d at 718–719, 590 N.W.2d at 7; WIS JI—CIVIL 2401. The Malzewskis' intentional-misrepresentation claim fails on the fifth element—reliance.

111

¶ 18. A buyer's claim based on a seller's alleged "intentional misrepresentation requires that the buyer's reliance be justifiable." *Lambert*, 218 Wis. 2d at 731, 582 N.W.2d at 92. As we have seen, the Malzewskis waived their right to have the Rapkins' home inspected even though the Real Estate Condition Report disclosed, at the very least, potential defects in the basement. Thus, the Malzewskis' reliance on the Real Estate Condition Report without exercising their right to have the home inspected was not justified. *See, e.g., Kanack v. Kremski*, 96 Wis. 2d 426, 432, 291 N.W.2d 864, 867 (1980) (" 'The law requires men in their dealing with each other, to exercise proper vigilance and apply their attention to those particulars which may be supposed to be within the reach of their observation and judgment, and not close their eyes to the means of information accessible to them.' ") (quoted source omitted).

C. *Strict-responsibility misrepresentation.*

¶ 19. The elements of strict-responsibility misrepresentation are: (1) the defendant made a representation of fact; (2) the representation was untrue; (3) the defendant made the representation based on his or her personal knowledge, or was so situated that he or she necessarily ought to have known the truth or untruth of the statement; (4) the defendant had an economic interest in the transaction; and (5) the plaintiff believed that the representation was true and relied on it. *D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 Wis. 2d 306, 336, 475 N.W.2d 587, 598 (Ct. App. 1991); Wis JI—Civil 2402. As with claims based on intentional misrepresentation, claims based on strict-responsibility misrepresentation require that the buyer's reliance be

112

justifiable. *Lambert*, 218 Wis. 2d at 731, 582 N.W.2d at 92. As noted, the Malzewskis' reliance on the Real Estate Condition Report without exercising their right to have the home inspected was not justified.

D. *Negligent misrepresentation.*

■

¶ 20. The elements of negligent misrepresentation are: (1) the defendant made a representation of fact; (2) the representation was untrue; (3) the defendant was negligent in making the representation; and (4) the plaintiff believed that the representation was true and relied on it. *See Ramsden*, 223 Wis. 2d at 721, 590 N.W.2d at 8; Wis JI—Civil 2403. This claim also fails on the reliance element. A claim based on "negligent misrepresentation inquires whether the buyer was negligent in relying upon the representation." *Lambert*, 218 Wis. 2d at 731, 582 N.W.2d at 92. As with the other misrepresentation claims, the Malzewskis' reliance on the Real Estate Condition Report without exercising their right to have the home inspected bars their negligent-misrepresentation claim as well.

E. *Theft-by-fraud.*

■

¶ 21. The elements of theft-by-fraud, Wis. Stat. § 943.20(1)(d), are: (1) the defendant made a false representation to the owner of the property; (2) the defendant knew that the representation was false; (3) the defendant made the representation with the intent to deceive and defraud the property's owner; (4) the defendant got title to the property as a result of the false representation; (5) the owner of the property was deceived by the representation; and (6) the owner of the

113

property was thus defrauded. *State v. Kurzawa*, 180 Wis. 2d 502, 525 n.15, 509 N.W.2d 712, 722 n.15 (1994); *see* WIS JI—CRIMINAL 1453. WISCONSIN STAT. § 895.80 gives civil remedies for the violation of § 943.20(1)(d); *see also* WIS JI—CIVIL 2419 (property loss through fraudulent misrepresentation). Section 895.80 (2001–02) provided, as material here:

> **Property damage or loss.** **(1)** Any person who suffers damage or loss by reason of intentional conduct that occurs on or after November 1, 1995, and that is prohibited under s. . . . 943.20 . . . has a cause of action against the person who caused the damage or loss.
>
> **(2)** The burden of proof in a civil action under sub. (1) is with the person who suffers damage or loss to prove his or her case by a preponderance of the credible evidence.
>
> **(3)** If the plaintiff prevails in a civil action under sub. (1), he or she may recover all of the following:
>
> (a) Treble damages.
>
> (b) All costs of investigation and litigation that were reasonably incurred.
>
> . . . .
>
> **(4)** A person may bring a civil action under sub. (1) regardless of whether there has been a criminal action related to the loss or damage under sub. (1) and regardless of the outcome of any such criminal action.[2]

(Footnote added.)

---

[2] WISCONSIN STAT. § 895.80 (2001–02) has been amended, and, as already noted, is now WIS. STAT. § 895.446. The changes are not material here.

¶ 22. A plaintiff seeking damages under WIS. STAT. § 895.80 for a violation of WIS. STAT. § 943.20(1)(d) must prove the elements of theft-by-fraud by a preponderance of the evidence. *See Tri-Tech Corp. of Am. v. Americomp Servs., Inc.*, 2002 WI 88, ¶ 24, 254 Wis. 2d 418, 430, 646 N.W.2d 822, 828 (damages under § 895.80 available for a violation of § 943.20(1)(b) (theft-by-contractor) if plaintiff proves by preponderance of the evidence the statutory elements of civil and criminal theft by contractor). "[T]he effect of §§ 895.80 and 943.20(1)(d) is simply to provide a specific remedy for certain instances of the tort of fraud in the inducement." *Dow v. Poltzer*, 364 F. Supp. 2d 931, 940 (E.D. Wis. 2005) (magistrate judge) (holding that the grant by § 895.80 of the right to sue for the violation of § 943.20(1)(d) is barred by the economic-loss doctrine). "Liability for fraud in the inducement requires that the five elements of an intentional misrepresentation claim for relief . . . are satisfied, and in addition, that the misrepresentation has occurred before contract formation." *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 30, 283 Wis. 2d 555, 580, 699 N.W.2d 205, 217. As we have seen, the Malzewskis' intentional-misrepresentation claim fails on the reliance element. Accordingly, their theft-by-fraud claim fails as well.

F. *False advertising.*

¶ 23. The elements of false advertising, WIS. STAT. § 100.18, are: (1) the defendant made to the public an " 'advertisement, announcement, statement or representation' " relating to the purchase of merchandise;

(2) the " 'advertisement, announcement, statement or representation' " was " 'untrue, deceptive or misleading' "; and (3) the plaintiff sustained a pecuniary loss because of the " 'advertisement, announcement, statement or representation.' " *See Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 39, 270 Wis. 2d 146, 170, 677 N.W.2d 233, 245 (quoting § 100.18); Wɪꜱ JI–Cɪᴠɪʟ 2418.

¶ 24. Reasonable reliance is not an element of false advertising, but may, as the Dissent cogently points out, be considered by a jury in determining whether " 'the purchaser in fact relied' " on the seller's representation. Dissent, ¶ 28 (quoting *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2006 WI App 148, ¶ 45, 295 Wis. 2d 298, 326, 720 N.W.2d 507, 522); *see K & S Tool & Die*, 2006 WI App 148, ¶¶ 39–45, 295 Wis. 2d at 322–326, 720 N.W.2d at 520–522. *K & S Tool & Die* was issued after the trial court granted summary judgment to the Rapkins. We are bound by *K & S Tool & Die, see Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246, 256 (1997) ("court of appeals may not overrule, modify or withdraw language from a previously published decision of the court of appeals").[3] We thus turn to the third and dispositive element— whether summary judgment is appropriate in connec-

---

[3] There are, nevertheless, undoubtedly some circumstances where reasonable reliance *should* be an element of a claim for false advertising that is decided as a matter of law. For example, a company, in connection with the recently released film Sᴜᴘᴇʀᴍᴀɴ Rᴇᴛᴜʀɴꜱ (Warner Bros. Studios 2006), advertises a blue cloak that it represents will *actually* permit someone to fly. We would be hard-pressed to say, as *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2006 WI App 148, 295 Wis. 2d 298, 720 N.W.2d 507, apparently requires, that a trial is required if an adult of normal intelligence who buys the cloak would have

tion with the Rapkins' representation that the only problem with the basement was slight seepage. We conclude that it is not.

¶ 25. The Rapkins admit that they knew that the basement walls had twelve-foot long, three-eighths-inch wide cracks, which they caulked and painted over. A reasonable jury could find that those cracks and the attempted efforts at remediation should have been disclosed, and that failure to do so violated WIS. STAT. § 100.18 even though the Malzewskis waived their right to have the property inspected. *See K & S Tool & Die*, 2006 WI App 148, ¶ 45, 295 Wis. 2d at 326, 720 N.W.2d at 522; *see also Grube v. Daun*, 173 Wis. 2d 30, 57, 496 N.W.2d 106, 116 (Ct. App. 1992) (false statement to a buyer of non-commercial real estate can be a violation of § 100.18).

¶ 26. We affirm the trial court's dismissal on summary judgment of all of the Malzewskis' claims except their claim under WIS. STAT. § 100.18, and we remand for trial on that claim.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.

¶ 27. KESSLER, J. (*dissenting*). I respectfully dissent from the Majority's conclusion that, because of this court's recent decision in *K&S Tool & Die Corp. v. Perfection Machinery Sales, Inc.*, 2006 WI App 148, 295 Wis. 2d 298, 720 N.W.2d 507, summary judgment in favor of the defendants (the Rapkins) was inappropriate on the WIS. STAT. § 100.18 claim.

¶ 28. In concluding that *K&S Tool & Die Corp.* eliminates the question of the reasonableness of a buyer's reliance on a specific representation under WIS.

---

a claim under WIS. STAT. § 100.18 if the cloak did not let the buyer fly, whether faster or slower than a "speeding bullet."

Stat. § 100.18, *see* Majority at ¶ 24, the Majority ignores contrary language in that case:

> [T]he unreasonableness of a purchaser's reliance on a representation may be relevant to whether the purchaser in fact relied, or . . . whether the purchaser would have "acted in its absence." That is, evidence that reliance would be unreasonable may lead a jury to conclude that the purchaser did not in fact rely on the representation but would have made the purchase without it.

*K&S Tool & Die Corp.*, 720 N.W.2d 507, ¶ 45 (quoting WI JI—Civil 2418).

¶ 29. The Majority holds that the trial court was correct in concluding that as to each of the other claims asserted by the Malzewskis, their alleged reliance on the Rapkins' written statement[1] about water seepage in the basement was unreasonable. Because the Malzewskis elected to close the transaction without exercising their right to an inspection of the property, which would have easily disclosed exactly the matter of which they now complain, I conclude that their unreasonable reliance on the Rapkins' Condition Report is also an appropriate basis upon which to sustain the trial court's grant of summary judgment dismissing the false advertising claim based on the language in *K&S Tool & Die Corp.* set forth above. Consequently, I would affirm the grant of summary judgment dismissing all claims.

---

[1] The Majority observes that the Rapkins never actually spoke with the Malzewskis about the condition of the house. *See* Majority, ¶ 8. The totality of the representation at issue here is the written Real Estate Condition Report provided in the context of the real estate transaction.