PER CURIAM.
¶1 This real estate case involves a property spouses Jennifer Korth and David Osterndorf (the Buyers) bought from James Hoffman.[1] The Buyers brought claims for breach of contract, WIS. STAT. § 100.18 (2015-16)[2] violations, negligence, fraudulent misrepresentation under WIS. STAT. §§ 895.446 and 943.20(1)(d), strict responsibility and negligent misrepresentation, and a violation of WIS. STAT. § 452.133 against the Hoffmans and/or their real estate broker, Tory Bruce Armitage, and brokerage firm, Shorewest Realtors, Inc. The Buyers appeal the order granting summary judgment in favor of the collective defendants. We affirm the order except to the extent that we conclude the breach-of-contract claim raises questions best left to the trier of fact. We thus reverse on that issue and remand to the circuit court for further proceedings consistent with this opinion.
¶2 The Buyers entered a contract to buy the Hoffmans' home in December 2011. The story actually begins in 2008 when James purchased the property from Donald and Marsha Wilkenson. Armitage, then Bruce, and Shorewest served as the Wilkensons' agent and listing broker. The Real Estate Condition Report the Wilkensons prepared disclosed defects in the roof and basement or foundation and leaks that could lead to the growth of unsafe levels of mold. James' home inspector discovered defective window seals, corrosion in the galvanized valleys on the roof, water damage to foundation walls, and a need for roof and window trim repairs and correction of a sump pump issue. James hired several other inspectors who recommended reroofing and additional repairs. Concerned, James refused to close and issued notices of defect and of termination. The price adjusted, the parties closed on the property about a week later.
¶3 When the Hoffmans decided to sell in 2011, they engaged Armitage and Shorewest. Kathleen signed the listing contract and prepared and signed the Real Estate Condition Report, in which she certified that "the owner" was unaware of defects in the roof, basement or foundation, or in the structure of the property. James rejected the Buyers' September 2011 offer to purchase. The Buyers submitted a second offer in December, which James accepted on Christmas Day. The Real Estate Condition Report that James purportedly signed bore "12-26-11" on the date line. The Condition Reports otherwise were substantively identical.
¶4 Before they purchased the house, the Buyers engaged an architect to look it over. They also retained Scot McLean, a professional property inspector, to inspect the property and provide a report. McLean's report noted that the Buyers told him some renovations may have been done without permits and the architect said an addition's window and door casings may have been installed incorrectly. The report advised the Buyers to verify that permits had been taken out and final inspections completed, to have an architect or professional engineer inspect the renovations to be certain they were properly done, and to pursue further evaluation of leaky window seals and areas he could not closely examine, such as the snow-covered roof, and areas of the basement wall obscured by paneling or storage shelves. The Buyers did not obtain other inspections.
¶5 Significant problems with the house became evident soon after the purchase. The Buyers engaged numerous professionals and, at the time of briefing, had spent over $ 477,350 in repairs to the home they purchased for $ 760,000. They believed the Hoffmans and Armitage/Shorewest knew of the defects because the Wilkensons and James' several inspectors had advised them of problems just three years before.
¶6 The Buyers commenced this action, as they believed the Hoffmans and Armitage/Shorewest had a duty to disclose the defects. They alleged that the Real Estate Condition Report was deceptive because the Hoffmans either were, or through reasonable diligence should have been, aware of roof leaks, window "pops,"[3] improper foundation supports, bulging basement walls, and a partially collapsed basement wall but failed to disclose those issues. Against the Hoffmans, the Buyers alleged breach of contract, a violation of WIS. STAT. § 100.18, and fraudulent misrepresentation under WIS. STAT. §§ 895.446 and 943.20(1)(d). Against Armitage/Shorewest, they alleged negligence, strict responsibility and negligent misrepresentation, violations of § 100.18 and WIS. STAT. § 452.133, and fraudulent misrepresentation under §§ 895.446 and 943.20(1)(d).
¶7 Armitage/Shorewest and the Hoffmans moved for summary judgment. The circuit court dismissed the Buyers' seven causes of action, concluding that, even if the Hoffmans were aware of some of the Buyers' complaints, there was insufficient proof that the Hoffmans had notice or knowledge of the degree to which the alleged problems existed at, or were likely to surface after, purchase; that the Buyers did not sufficiently plead that the Hoffmans misrepresented their awareness of certain defects; that the Buyers could have amended their complaint as they gained more information during discovery; that the WIS. STAT. § 100.18 claims were not properly pled; and that, despite being made aware of various issues through their home inspection, they opted not to further evaluate those issues before closing on their purchase. The Buyers appeal.
Breach of Contract (Hoffmans)
¶8 We review summary judgments de novo, applying the same methodology as the circuit court. Park Bancorporation, Inc. v. Sletteland , 182 Wis. 2d 131, 140, 513 N.W.2d 609 (Ct. App. 1994). "If a dispute of any material fact exists, or if the material presented on the motion is subject to conflicting factual interpretations or inferences, summary judgment must be denied." Lambert v. Hein , 218 Wis. 2d 712, 723, 582 N.W.2d 84 (Ct. App. 1998).
¶9 The Buyers alleged that, because of the several inspections James commissioned before he purchased the house in 2008, the Hoffmans knew there were material defects in the roof; in the basement or foundation, including cracks, seepage, and bulges; and in the structure of the property. The Hoffmans' 2011 counter-offer, however, made the following representation:
[A]s of the date of acceptance Seller has no notice or knowledge of Conditions Affecting the Property or Transaction ... other than those identified in Seller's Real Estate Condition Report dated 8/2011, which was received by Buyer prior to Buyer signing this Offer and which is made part of this Offer by reference.
¶10 The Hoffmans do not dispute that they had a duty to disclose known defects; they argue instead that the Buyers failed to present any admissible evidence in response to the summary judgment motion showing that, as of the date of acceptance of the counteroffer, they had actual notice or knowledge of the conditions of which the Buyers complain.
¶11 The circuit court noted that the Buyers could have followed their inspector's recommendations to further evaluate the roof, window leaks, and the basement walls before the purchase but opted not to. It strikes us, however, that the reasonableness of the Buyers' reliance on the inspector's report and on their architect's walk-through is a question for the jury.
¶12 We cannot ignore the facts of record that strongly suggest that the Hoffmans had more knowledge of the defects than they let on. The Wilkensons' Real Estate Condition Report disclosed defects and leaks in the roof and basement or foundation. James' home inspector reported other problems of such concern to James that, not only did James engage additional inspectors who recommended repairs, but he terminated the offer. Yet the Hoffmans did not inform the Buyers of either the additional inspections James had commissioned or of the results.
¶13 Then, after James purchased the house, Kathleen contacted Armitage to complain of leaking in the same places the Buyers later had leakage problems. Kathleen testified that they replaced the roof. They apparently simply reused the corroded galvanized valleys, however, and did not replace the "under-shingle" rubber membrane. Cosmetic "fixes"-e.g., painting over damp, rotting wood-also may have been done, resulting in paint peeling off in great sheets. Post-purchase inspections revealed that renovations employed "irregular plumbing" and inadequate insulation. The quality of the unpermitted repairs and renovations became a central fact dispute. At a minimum, the Hoffmans did not fully disclose issues of which they were or should have been aware.
¶14 Yet other facts of record give us pause. Even without their home inspector's recommendation, the Buyers had the contractual right to an additional inspection of the premises by a qualified independent inspector or an independent qualified third party and the right to declare their offer null and void based on McLean's inspection report, an additional inspection report, or a report from the follow-up inspections McLean recommended. Such provisions
are intended to afford a buyer the opportunity to discover actual or potential defects in the property so that the buyer can then make an informed choice whether to proceed with the transaction, whether to seek amendments to the terms of the contract, or whether to abort the contract. Thus, these provisions avoid the prospect of future disputes and possible litigation.
Lambert , 218 Wis. 2d at 729.
¶15 Due to the uncertainty of whether the Hoffmans knew of the magnitude of the property defects, whether the Buyers had sufficient notice of those facts, and whether the Buyers more wisely should have pursued additional investigation, we conclude those questions are best not answered at summary judgment. We reverse the ruling on the breach-of-contract claim.
Negligence (Armitage/Shorewest)
¶16 The Buyers contend Armitage/Shorewest, a licensee under WIS. STAT. § 452.01(5), had a duty to disclose defects learned of through representing the Wilkensons in 2008. But a real estate licensee is "not required to have the technical knowledge, skills or training possessed by a competent third party inspector and investigators of real estate and related areas." WIS. ADM. CODE § REEB 24.03(2)(d). A qualified third party is "any person whom the licensee or a party to the real estate transaction reasonably believes has the expertise necessary to meet the industry standards of practice for the type of inspection or investigation that has been conducted by the 3rd party in order to prepare the written report." WIS. STAT. § 452.23(2)(b) ; WIS. ADM. CODE § REEB 24.02(14). Where an inspection is conducted by a qualified third party, § 452.23(2)(b) relieves a broker of the duty to disclose information related to the condition of the property. Conell v. Coldwell Banker Premier Real Estate , 181 Wis. 2d 894, 901, 512 N.W.2d 239 (Ct. App. 1994) ; WIS. ADM. CODE § REEB 24.07(5).
¶17 The parties do not dispute that McLean was a qualified third party. Nor does either contend Armitage/Shorewest possessed knowledge in 2011 contradicting information in McLean's report. See WIS. STAT. § 452.23(3). The court noted "sloppy handling of some of the details" by both parties' realtors and that, as McLean recommended further investigation, the Buyers' realtor might have urged them to more closely investigate red flags. The court concluded, however, that "ultimately, you can only explain the options to people, and then they make their own decisions. And it certainly doesn't-it looks like they made a conscious decision not to proceed further with it." We agree that the negligence claim against Armitage/Shorewest fails.
Strict-Responsibility Misrepresentation (Armitage/Shorewest)
¶18 The elements of strict-responsibility misrepresentation are: (1) the defendant made a representation of fact; (2) the representation was untrue; (3) the defendant made the representation based on his or her personal knowledge, or was so situated that he or she necessarily ought to have known the truth or untruth of the statement; (4) the defendant had an economic interest in the transaction; and (5) the plaintiff believed that the representation was true and relied on it. D'Huyvetter v. A.O. Smith Harvestore Prods. , 164 Wis. 2d 306, 336, 475 N.W.2d 587 (Ct. App. 1991).
¶19 The Buyers' claim is premised not on a misrepresentation of fact but on an alleged failure to disclose. Because Armitage/Shorewest made no representations, the Buyers' claim fails.
Negligent Misrepresentation (Armitage/Shorewest)
¶20 "The elements of negligent misrepresentation are: (1) the defendant made a representation of fact; (2) the representation was untrue; (3) the defendant was negligent in making the representation; and (4) the plaintiff believed that the representation was true and relied on it." Malzewski v. Rapkin , 2006 WI App 183, ¶20, 296 Wis. 2d 98, 723 N.W.2d 156. This claim against Armitage fails for the same reason as does the claim of strict-responsibility misrepresentation: Armitage/Shorewest made no representations on which the Buyers relied.
Violation of WIS. STAT. § 100.18 (All defendants)
¶21 WISCONSIN STAT. § 100.18, Wisconsin's Deceptive Trade Practices Act (DTPA), "generally prohibits false, deceptive, or misleading representations or statements of fact in public advertisements or sales announcements." Tietsworth v. Harley-Davidson, Inc. , 2004 WI 32, ¶38, 270 Wis. 2d 146, 677 N.W.2d 233.
¶22 The Buyers' allegations are insufficient to state a claim against the Hoffmans for two reasons. First, WIS. STAT. § 100.18 does not apply to a nondisclosure. Tietsworth , 270 Wis. 2d 146, ¶40. "The DTPA does not purport to impose a duty to disclose, but, rather, prohibits only affirmative assertions, representations, or statements of fact that are false, deceptive, or misleading." Id.
¶23 Second, WIS. STAT § 100.18 is aimed at untrue, deceptive, or misleading statements made to induce a member of the public to take certain actions. Kailin v. Armstrong , 2002 WI App 70, ¶44, 252 Wis. 2d 676, 643 N.W.2d 132. A person is a member of "the public" until a "particular relationship" exists between that person and the defendant. K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc. , 2007 WI 70, ¶27, 301 Wis. 2d 109, 732 N.W.2d 792. A contract was formed when the Buyers accepted James' counteroffer on December 25, 2011. See Fricano v. Bank of Am. NA , 2016 WI App 11, ¶29, 366 Wis. 2d 748, 875 N.W.2d 143. The only Real Estate Condition Report bearing James' signature has "12-26-11" on the date line. "[A] statement made to the particular party with whom one has contracted is not a statement made to 'the public.' " Kailin , 252 Wis. 2d 676, ¶43. If there were misrepresentations in the Condition Report, they were made after the Buyers entered into the contract to purchase, so the statements could not have induced them to buy. See id. , ¶44. Because the Buyers' § 100.18 claim against the Hoffmans falls of its own weight, we need not address the Hoffmans' contention that the statute of limitations has run.
¶24 Once more, the Buyers present a litany of failures of disclosure by Armitage/Shorewest, dating back to James' 2008 purchase of the house. Again, WIS. STAT. § 100.18 does not apply to a nondisclosure. Tietsworth , 270 Wis. 2d 146, ¶40. Their claim further fails because § 100.18
does not apply to a person licensed as a broker or salesperson under s. 452.09 while that person is engaged in real estate practice ... unless that person has directly made, published, disseminated, circulated or placed before the public an assertion, representation or statement of fact with the knowledge that the assertion, representation or statement of fact is untrue, deceptive or misleading.
Section 100.18(12)(b). The Buyers produced no evidence that Armitage/Shorewest engaged in such activity.
Fraudulent Misrepresentation Pursuant to WIS. STAT. §§ 895.446 and 943.20(1)(d) (All Defendants)
¶25 The Buyers do not develop this claim. They say only that they raised it in their complaint and that the circuit court "made no direct reference" to the statutes or to the claim. "[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned." A.O. Smith Corp. v. Allstate Ins. Cos. , 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998). We discuss it no further.
Violation of WIS. STAT. § 452.133 (Armitage/Shorewest)
¶26 Among the duties of licensees providing brokerage services is the duty "to timely disclose in writing all material adverse facts that the firm knows and that the party does not know or cannot discover through reasonably vigilant observation, unless the disclosure of the material adverse fact is prohibited by law." WIS. STAT. § 452.133(1)(c). A broker or salesperson also must disclose any facts he or she knows "that contradict any information included in a written report described under [ WIS. STAT. § 452.23 ](2)(b)," and must "exercise the degree of care expected to be exercised by a reasonably prudent person who has the knowledge, skills, and training required for licensure under this chapter." Sec. 452.23(3), (4).
¶27 As this court said in Conell , and as we observed earlier, WIS. STAT. § 452.23(2)(b)"is straightforward in that it relieves the broker from the duty to disclose information related to the condition of the property where an inspection is conducted by a 'qualified third party.' " Conell , 181 Wis. 2d at 901 (citation omitted). WISCONSIN ADM. CODE § REEB 24.07(5) is likewise clear that the broker may rely on the results of an inspection by a qualified third party.
¶28 Armitage testified that the Wilkensons had told her in 2008 that they experienced ice damming in the kitchen and in a bedroom and that, shortly after James closed on the property in 2008, Kathleen called to report that the roof, windows, and skylights were leaking badly. Kathleen testified that they replaced the roof. Assuming Armitage/Shorewest knew of defects in 2008, the summary judgment materials did not establish that they had knowledge of continuing problems in 2011 that contradicted McLean's inspection report. WISCONSIN STAT. § 452.23(2)(b) thus operates to relieve Armitage and Shorewest from their disclosure obligations.
¶29 Once again, we affirm the order except to the extent that we conclude the Buyers' breach-of-contract claim raises questions best left to the trier of fact. We thus reverse in that regard and remand to the circuit court for further proceedings consistent with this opinion.
By the Court. -Order affirmed in part; reversed in part and cause remanded.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

James was the sole owner of the property although his wife, Kathleen, also lived there. We use "the Hoffmans" because only Kathleen signed the listing contract and the first Real Estate Condition Report. A second Condition Report ostensibly bore James' signature, but its authenticity was questioned.

All references to the Wisconsin Statutes are to the 2015-16 version unless noted.

The Hoffmans inform us that "[w]indow pops" are "where the seal between the glass panes of the window have 'popped' and released gas between the panes possibly allowing for fogging of those windows."