PER CURIAM.
¶1 Wendy Sanders and Dale Sanders purchased a home from Eleanor Hertel and then sued Hertel for breach of contract and misrepresentation, claiming that Hertel was aware of, but failed to properly disclose, certain defects of the home in the seller's Real Estate Condition Report. In order to prevail on each of these claims, the Sanderses must prove that they reasonably relied on Hertel's representations in the Report. The circuit court dismissed the Sanderses' claims on summary judgment. The Sanderses, pro se, appeal. For the reasons discussed below, we affirm.
BACKGROUND
¶2 Hertel and her late husband owned the home at issue, which we will refer to as the property. Hertel has not lived in the property since 2010. During the period between Hertel vacating the property in 2010 and 2016, when the Sanderses purchased the property, the house was occupied by various people, including an individual who unsuccessfully attempted to purchase the property by land contract and two separate renters.
¶3 On May 19, 2016, Hertel submitted a Real Estate Condition Report to the Sanderses. In the Report, Hertel represented that she was not "aware of defects in the roof, structure, and walls, and further represented that she was not aware of" any roof leaks or any "water or moisture intrusions or conditions that might initiate the growth of unsafe levels of mold."
¶4 After purchasing the property, the Sanderses had the fireplace removed as part of a planned remodel. The Sanderses claim that when the fireplace was removed, they discovered "defects in the roof, roof leaks, water and moisture intrusion, water damage, and mold."
¶5 The Sanderses sued Hertel, asserting claims for breach of contract, intentional misrepresentation, statutory misrepresentation under WIS. STAT. §§ 895.446 (2017-18)[1] and 943.20(1)(d), and misrepresentation under WIS. STAT. § 100.18. Hertel moved for summary judgment dismissing the Sanderses' claims. The circuit court granted Hertel's motion, concluding that, even assuming in favor of the Sanderses all reasonable inferences, they could not establish the necessary elements of any of their claims based on the summary judgment submissions. The Sanderses appeal.
¶6 We set forth additional facts as necessary below.
DISCUSSION
¶7 The Sanderses contend that the circuit court erred in granting summary judgment in favor of Hertel. We review the grant or denial of summary judgment de novo. Hardy v. Hoefferle , 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).
¶8 To repeat, the Sanderses claim breach of contract, common law misrepresentation, statutory misrepresentation, and misrepresentation under WIS. STAT. § 100.18, all of which share as an essential element the allegation that the Sanderses reasonably relied on inaccurate disclosures in the Real Estate Condition Report. "When an essential element of a claim cannot be proved, under any view of the evidence, summary judgment is appropriate." Smith v. Dodgeville Mut. Ins. Co. , 212 Wis. 2d 226, 233, 568 N.W.2d 31 (Ct. App. 1997). For the reasons explained below, upon our de novo review of the summary judgment submissions, we conclude that an essential element of each of the Sanderses' claims cannot be established, namely, reasonable or justifiable reliance.[2] Therefore, we affirm the circuit court's grant of summary judgment in favor of Hertel. Below, we begin by reviewing each claim and explain how each requires proof of reasonable reliance as one of its elements. We then examine the summary judgment submissions and explain why those submissions do not establish a dispute of material fact as to reasonable reliance here.
1. The Claims and Their Elements
¶9 The first claim asserted by the Sanderses is for breach of contract. The Sanderses alleged in their complaint that "as a term and condition of the contract, [Hertel] represented that she had no notice or knowledge of conditions affecting the property other than those identified in the Real Estate Condition Report." The offer to purchase signed by the Sanderses and Hertel contains the following language:
PROPERTY CONDITION REPRESENTATIONS: Seller represents to Buyer that as of the date of acceptance Seller has no notice or knowledge of Conditions Affecting the Property or Transaction ... other than those identified in Seller's Real Estate Condition Report....
¶10 The circuit court interpreted this claim as a claim for breach of contract.
¶11 In Malzewski v. Rapkin , 2006 WI App 183, ¶14, 296 Wis. 2d 98, 723 N.W.2d 156, we discussed a claim for breach of contract and breach of contract warranty based upon a contract term identical to the offer to purchase language quoted above in ¶9. We pointedly stated in Malzewski that, in claiming that the sellers breached their contractual warranty, the buyers "do not refer to any clause in any contract other than the Real Estate Condition Report." Id. We conclude that the present case presents the same situation as Malzewski , and despite the fact that the Sanderses do not specifically plead a claim for breach of warranty, as the buyers in Malzewski did, they do not refer to any other clause in any contract in support of their breach of contract claim, and are, therefore, asserting a claim for breach of contract warranty as in Malzewski .
¶12 The elements of a breach of contract warranty claim are as follows: (1) an affirmation of fact; (2) inducement to the buyer; and (3) reliance by the buyer. Selzer v. Brunsell Bros., Ltd. , 2002 WI App 232, ¶13, 257 Wis. 2d 809, 652 N.W.2d 806. In addition, and notably in this appeal, the buyer must show that his or her reliance was reasonable. See Malzewski , 296 Wis. 2d 98, ¶14 (dismissing a breach of contract warranty claim based on the conclusion as a matter of law that buyers who proceeded to purchase property after waiving a home inspection unreasonably relied on the disclosures in the Real Estate Condition Report).
¶13 The second claim asserted by the Sanderses is for intentional misrepresentation. The elements of intentional misrepresentation are as follows: (1) the defendant made a representation of fact; (2) the representation was untrue; (3) the defendant either knew it was untrue or recklessly did not care whether it was true or false; (4) the defendant made the representation with the intent to deceive the plaintiff in order to induce the plaintiff to act on it to the plaintiff's pecuniary damage; and (5) the plaintiff believed that the representation was true and relied upon it. Id. , ¶17. As with the breach of contract warranty claim, "[a] buyer's claim based on a seller's alleged 'intentional misrepresentation requires that the buyer's reliance be justifiable.' " Id. , ¶18 (quoted source omitted). As the jury instruction on intentional misrepresentation states:
If you find, however, that (plaintiff) or the person to whom the representation was made knew it to be untrue, then there can be no justifiable reliance as no one has the right to rely upon representation that he or she knew was untrue.
Nor can there be justifiable reliance if (plaintiff) relied on a representation which ... is shown by facts within (his) (her) easy observation and (his) (her) capacity to understand to be so obviously untrue.
WIS JI- CIVIL 2401.
¶14 The third claim asserted by the Sanderses is for statutory misrepresentation under WIS. STAT. §§ 895.446 (civil remedy) and 943.20(1)(d) (theft by fraud). The elements of theft by fraud are as follows: (1) the defendant made a false representation to the property owner; (2) the defendant knew that the representation was false; (3) the defendant made that representation with the intent to deceive and defraud the plaintiff; (4) the defendant obtained property as a result; (5) the property owner was deceived by the misrepresentation; and (6) the property owner was thus defrauded. Malzewski , 296 Wis. 2d 98, ¶21. As we further held in Malzewski , liability under these statutes also requires that the elements of intentional misrepresentation be proven, including reasonable reliance. Id. , ¶22.
¶15 The fourth and final claim asserted by the Sanderses is for false advertising, contrary to WIS. STAT. § 100.18. The elements of false advertising are as follows: (1) the defendant made to one or more members of the public a statement, or representation concerning the sale of property with the intent to induce an obligation; (2) the statement or representation contained a statement that was untrue, deceptive, or misleading; and (3) the plaintiff sustained a monetary loss as a result of the statement. Novell v. Migliaccio , 2008 WI 44, ¶44, 309 Wis. 2d 132, 749 N.W.2d 544.
¶16 Unlike the other claims asserted by the Sanderses, reasonable reliance on the false statement is not an express element of a claim under WIS. STAT. § 100.18. However, the jury instruction for false advertising, WIS JI- CIVIL 2418, discusses reasonable reliance in connection with determining whether a plaintiff suffered a monetary loss as a result of the false statement:
In determining whether (plaintiff )'s loss was caused by the ... (statement), the test is whether (plaintiff ) would have acted in its absence. Although the ... (statement) need not be the sole or only motivation for (plaintiff )'s decision to (buy) ... the [property] ... it must have been a material inducement. That is, the ... (statement) must have been a significant factor contributing to (plaintiff )'s decision. [You may consider the reasonableness of (plaintiff )'s reliance on the ... (statement) by (defendant ) in determining whether the ... (statement) materially induced (plaintiff ) to sustain a monetary loss.]
WIS JI- CIVIL 2418 (emphasis added). While jury instructions are not mandatory precedent, they are persuasive authority. State v. Seymour , 177 Wis. 2d 305, 322, 502 N.W.2d 591 (Ct. App. 1993). We are persuaded and agree that the Sanderses could not have sustained a pecuniary loss as a result of a false statement by Hertel unless they reasonably relied upon it.
¶17 Having established that each of the Sanderses' claims requires proof that the Sanderses reasonably relied upon the allegedly false statements made by Hertel, we turn to the question of whether there are material issues of fact as to whether reasonable reliance by the Sanderses can be established. Based on our examination of all relevant portions of the summary judgment materials, we conclude that the Sanderses could not show that they reasonably relied on the alleged false statements.[3]
2. The Summary Judgment Submissions
¶18 Significant to our conclusion is testimony that Wendy and Dale Sanders each gave in depositions on May 17, 2017, with both of them filing errata sheets in attempts to modify their deposition testimony. In addition, Wendy and Dale each filed affidavits. Dale's affidavit was dated July 27, 2017, long before the filing of Hertel's motion for summary judgment on October 2, 2017. Wendy's affidavit was dated November 2, 2017, and was filed as part of the materials opposing summary judgment. We summarize the deposition testimony first, then consider the impact of the affidavits.
¶19 Both testified that they were looking for property on water and they liked the waterfront on the property and were also attracted by its reasonable price. Dale testified that "[w]e weren't attracted to the house very much."
¶20 When the Sanderses decided that they wanted to view the property, they contacted their realtor. They neither met nor spoke with Hertel directly, though Dale testified that he understood that Hertel was in her 80's. The Sanderses viewed the property multiple times. Wendy testified that they visited the property three times before purchasing the property, and that they brought a contractor with them on their second visit and a home inspector with them on their third visit. Dale, on the other hand, testified that they viewed the property "[m]any times;" "[s]omewhere between five and [ten]." This establishes, at a minimum, three visits.
¶21 Wendy and Dale both testified that they noticed things about the house that caused them concern. Wendy testified that on the first visit she noticed a "deodorizer" smell, that the inside of the house had been recently repainted white, and that there were water stains in front of the fireplace. She also testified that she saw "water leaks all over the place." Dale testified that he was concerned about the age of the house and that, being on water, it might have structural defects or mold. Dale also testified that he saw water damage and water marks "around ... the whole lower level" of the property.
¶22 The Sanderses both testified that they noticed additional evidence of problems with each successive visit to the house. They both testified that, on one visit, they pushed back the tile on the drop-ceiling on the lower level, and saw water marks throughout that level. Dale further testified that he saw additional evidence of problems not testified to by Wendy. Dale testified: "We noticed drywall repairs in ... [the] [k]itchen, bedrooms, [and] living room." Dale testified that in the kitchen, he noticed that cracks had been repaired and that there was repainting around the windows. Dale testified that in the northwest bedroom, he observed that the drywall texture was different, suggesting that it had been repaired. Dale testified that the northeast bedroom had repairs around windows and doors and that the living room had repairs around windows.
¶23 Wendy testified that she talked to one of the neighbors prior to purchasing the house about prior repairs that had been made to the house.
¶24 Dale testified that, in light of all of the problems they observed, they offered Hertel a much lower price than the asking price, which Hertel rejected. Far from dropping the price, Hertel then "came back with [what she] wanted to sell it to [the Sanderses] as is." Wendy testified that Hertel also offered that the Sanderses could have a mold test done on the property, but that they did not do so.
¶25 Wendy testified that the purchase contract had a contingency for a home inspection, which they obtained. Wendy testified that she understood that the contingency required that the inspection show no defects. Wendy testified that their home inspection revealed defects in the property, but that they did not exercise their right to terminate the purchase contract.[4] Wendy testified that instead, they asked for, and received, a credit of $ 1,500 for three defects shown on their inspection report. One of the identified defects was for cracks in the chimney cap; the other two defects were not related to water stains or mold. Wendy testified that she and Dale had rejected the idea of Hertel having the right to cure any identified defects, because she did not like the manner in which the chimney cap cracks had been covered in aluminum foil and she lacked confidence in Hertel's ability to make repairs.
¶26 Wendy testified that, at the time of the purchase, she and Dale were planning to remodel the property, and both testified that they planned to tear out the chimney and fireplace. Wendy testified that, even though they knew that they had the right to walk away from the deal if there were defects in the property, they chose not to. "But the stains we saw were in the area of the fireplace that we were going to remove. ... So we thought we're going to remove it anyway, we'll fix -- the chimney will be gone then, because it will be just roof, and we won't have water problems after that."
¶27 Considered in isolation, the testimony of the Sanderses establishes that they proceeded with the purchase of the property despite observing conditions directly contrary to Hertel's representations in the Real Estate Condition Report as to the absence of any problems related to water damage or mold. Further, they can point to no evidence that could be used at trial to rebut this fact and we see none in the record. For these reasons, we conclude that any reliance by them on Hertel's representations was unreasonable as a matter of law.[5]
¶28 The Sanderses argue that they are able to rebut this proposition based on their affidavits. As we explain, their resort to their affidavits is unavailing. We begin with Dale's affidavit, which as we have explained, was prepared after his deposition, but months prior to the filing of the motion for summary judgment. This affidavit was offered in support of the Sanderses' cross-motion in limine, which sought to bar any party from using Dale's deposition testimony or calling him as a witness, based on Dale's averment that he suffered from a memory disability at the time of the desposition. The circuit court rejected this proposition as implausible and the Sanderses fail to challenge that ruling on appeal. For this reason, the affidavit does not preclude our reliance on Dale's deposition testimony for purposes of determining whether Hertel is entitled to summary judgment.
¶29 We also do not consider the contents of Wendy's affidavit. The circuit court ruled that "[t]he sham affidavit rule will preclude any attempts through the affidavits of Wendy Sanders and Dale Sanders to change their deposition testimony." The Sanderses have not challenged this ruling on appeal.
CONCLUSION
¶30 For all of these reasons, we conclude that the summary judgment submissions do not include evidence from which a factfinder could reasonably infer that the Sanderses reasonably relied upon the alleged false representations of Hertel, and accordingly we affirm summary judgment dismissing their claims against Hertel.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

As explained in the Discussion section below, the common element is variously referred to as "reasonable" reliance or "justifiable" reliance in the context of different claims. However, we discern no difference in meaning between the two terms, at least that could matter in this appeal. Therefore, for ease of reference, from this point forward, we use the term "reasonable" to refer to the common element.

We do not address the other elements of each cause of action, which are the subject of most of the voluminous material in the summary judgment record, because, as we have noted above, if this one element cannot be proved, summary judgment is appropriate. Likewise, although Hertel argues as an alternate ground for summary judgment that the Sanderses' claims are barred by the economic loss doctrine, we do not address the economic loss doctrine as it has no effect on the outcome here.

Significantly, it is undisputed that the inspector explicitly disclaimed any certification on the topic of mold, and therefore the Sanderses would not be able to argue at a trial that they reasonably relied on an opinion of the inspector that there was no mold in the property.

After giving their depositions, the Sanderses offered errata to correct what they submitted were errors in the deposition transcripts. Having reviewed each change offered in the errata, we see no matter covered which would raise a material question of fact that would have any effect upon the outcome of this appeal.